[No. 61196-3. En Banc. October 6, 1994.]

CERTIFICATION FROM THE UNITED STATES
COURT OF APPEALS FOR THE NINTH CIRCUIT
IN
AMERICAN HOME ASSURANCE COMPANY, *Appellee*, v.
DAVID COHEN, *Defendant*, THERESA D.
SCOTT, ET AL, *Appellants*.

866

*Mitchell, Lang & Smith,* by *Matthew T. Boyle* and *Catherine E. Doudnikoff,* for appellee.

*David A. Summers,* for appellants.

*Russell C. Love* and *Laurie D. Kohli* on behalf of Washington Defense Trial Lawyers, amicus curiae for appellee.

*Roberta N. Riley* on behalf of Northwest Women's Law Center, NOW Legal Defense and Education Fund, Stop Abuse by Counselors, and Boston Associates To Stop Treatment Abuse, amicus curiae for appellants.

*Gary N. Bloom, Bryan P. Harnetiaux,* and *Amanda H. DuBois* on behalf of Washington State Trial Lawyers Association, amicus curiae for appellants.

ANDERSEN, C.J. —

## FACTS OF THE CASE

This case is before us on two questions certified to this court by the United States Court of Appeals for the Ninth Circuit. At issue is whether a professional liability insurance policy, which limits the coverage available to a person

injured by the sexual misconduct of an insured psychologist, violates this state's public policy.

Pursuant to the Federal Court Local Law Certificate Procedure Act, RCW 2.60, the United States Court of Appeals for the Ninth Circuit submitted the following statement as stipulated facts:

American Home Assurance Company ("American Home") is an insurance company incorporated in the state of New York. Dr. David Cohen is a psychologist licensed to practice in the state of Washington. American Home issued to Dr. Cohen a policy of psychologist's professional liability insurance, with a liability limit of $1,000,000 ("Policy"). The Policy contains [17] exclusions and a $25,000 liability sublimit under a special provision concerning sexual misconduct. The [pertinent] exclusionary clause [paragraph (p)] and the special provision at issue are set forth in the Policy as follows:

[. . .] NOTE ALSO THAT A SMALLER LIMIT OF LIABILITY APPLIES TO JUDGMENTS OR SETTLEMENTS WHEN THERE ARE ALLEGATIONS OF SEXUAL MISCONDUCT (SEE THE SPECIAL PROVISION "SEXUAL MISCONDUCT" IN THE POLICY).

\* \* \*

This policy does not apply:

\* \* \*

(p) to any wrongful act committed with knowledge that [it] was a wrongful act.

\* \* \*

SPECIAL PROVISIONS

1. Sexual Misconduct — The total limit of the Company's liability hereunder shall not exceed $25,000 in the aggregate for all damages with respect to the total of all claims against any insured(s) involving any actual or alleged erotic physical contact, or attempt thereat or proposal thereof:

(a) by any Insured or by any other person for whom any Insured may be legally liable; and . . .

In the event any of the foregoing are alleged at any time, either in a complaint, during discovery, at trial or otherwise, any and all causes of action alleged and arising out of the same or related courses of professional treatment and/or relationships shall be subject to the aforesaid $25,000 aggregate limit of liability and to all other provisions of this clause. The aforesaid $25,000 aggregate limit of liability shall be part of, and not in addition to, the limits of liability otherwise afforded by this policy.

Thus, under the special provision of the Policy, all claims involving sexual misconduct are subject, in the aggregate, to sublimits of $25,000. Furthermore, once sexual misconduct is alleged, all claims arising out of the same or related course of treatment, whether involving sexual misconduct or not, are subject to the same $25,000 sublimits.

In January 1992 Theresa and Joseph Scott brought an action against Dr. Cohen in the King County Superior Court of Washington claiming professional negligence, breach of fiduciary duty, and loss of consortium. In their original complaint, the Scotts alleged that while Theresa Scott was in psychotherapy treatment under the care of Dr. Cohen, Dr. Cohen committed a number of acts amounting to professional negligence and breach of fiduciary duty. The Scotts amended their complaint to assert nine separate claims of malpractice, namely, that he (a) failed to anticipate two suicide attempts which he should have known were likely to occur; (b) failed to provide competent treatment for several of Ms. Scott's problems; including without limitation, her desire for self-mutilation; her bulimia; and her history of sexual assaults and abuse; (c) negligently encouraged or permitted Ms. Scott to develop an unhealthy dependence on him while she was his client; (d) made unprofessional statements to her about her husband; (e) abandoned her therapeutically and discontinued treating her without referring her to another therapist, notwithstanding that he knew or should have known that she needed continued psychotherapy; (f) mishandled transference and induced her to engage in sexual intercourse with him; (g) continued to bill the Scotts' health insurance carrier and Ms. Scott's mother after the relationship had become sexualized and therapy was no longer being provided; (h) failed to discontinue the sexual relationship with Ms. Scott after she expressed to him her feelings of guilt and despair over their sexual activities together and (i) threatened to take his own life when she discontinued the relationship and revealed her intention to disclose their relation to her husband.

American Home is currently defending Dr. Cohen in the state action subject to a reservation of rights. On May 19, 199[3], before trial, the King County Superior Court issued an order to stay the state court proceedings. On June 8, 1992 American Home [had] filed a complaint in the United States District Court for the Western District of Washington seeking declaratory relief against Dr. Cohen and the Scotts. American Home moved for summary judgment in the district court, seeking a declaration that the Policy excludes coverage for the alleged sexual misconduct by Dr. Cohen or, in the alternative, that the Policy's special provision concerning sexual misconduct limits American Home's liability to $25,000 for all claims arising out of the therapeutic relationship between Dr. Cohen

and Ms. Scott, including those alleging non-sexual misconduct. The Scotts filed a cross motion for summary judgment seeking a declaration that (1) the Policy provides coverage for the claims alleging sexual misconduct, (2) the sexual misconduct provision, which has a $25,000 sublimit, is void as against public policy, or in the alternative, (3) that the claims alleging non-sexual misconduct by Dr. Cohen are subject to the Policy limit of $1,000,000. Dr. Cohen failed to file an answer to American Home's complaint, and was dismissed from the district court action.

In an order filed March [3], 1993 the district court made three rulings,[1] two of which have been appealed to the Ninth Circuit Court of Appeals:

1. The court denied American Home's motion for summary judgment excluding coverage for errors involving sexual misconduct. The district court found the Policy ambiguous, and granted the Scotts' motion for a summary declaration that the Policy affords coverage for sexual misconduct. This ruling by the district court has not been challenged on appeal to the Ninth Circuit Court of Appeals.

2. The district court denied the Scotts' motion for a declaration that the $25,000 sublimit on sexual misconduct claims violates Washington state public policy, and instead ruled that those provisions do not violate Washington state public policy. The Scotts have challenged this ruling on appeal.

3. The district court denied American Home's motion for a declaration that all of the Scotts' claims, in the aggregate, are subject to the $25,000 sublimit, and ruled that the $25,000 sublimit on claims of non-sexual misconduct arising out of the same course of treatment as the sexual misconduct is void as against Washington state public policy. American Home has filed a cross-appeal of this ruling.

In their notice of appeal, the Scotts contend that the district court erred in finding that the $25,000 sublimit on claims of sexual misconduct alone does not violate Washington state public policy. In the cross-appeal, American Home argues that the district court erred in finding that the $25,000 sublimit on claims of non-sexual misconduct arising out of the same course of treatment as the sexual misconduct is void as against Washington state public policy. The district court's finding that the Policy affords coverage for sexual misconduct has not been challenged on appeal.

(Citations to the trial court order omitted.) Order of certification (Jan. 25, 1994), at 2-7.

---

[1]The district court opinion is set forth in *American Home Assur. Co. v. Cohen*, 815 F. Supp. 365 (W.D. Wash. 1993).

The Ninth Circuit Court of Appeals has certified two questions asking us to determine whether the provisions limiting coverage in instances where sexual misconduct is alleged are against the public policy of this state.

Amici briefs have been filed by the Washington Defense Trial Lawyers, by Washington State Trial Lawyers Association, and jointly by the Northwest Women's Law Center, Stop Abuse by Counselors, the National Organization for Women (NOW) Legal Defense and Education Fund, and the Boston Associates to Stop Treatment Abuse (BASTA).

QUESTIONS CERTIFIED FOR ANSWER[2]

1. Is it against the public policy of the state of Washington for an insurer to provide lesser coverage for a psychologist's sexual misconduct than it provides for the psychologist's non-sexual misconduct?

2. Is it against the public policy of the state of Washington for an insurer to provide lesser coverage for a psychologist's non-sexual misconduct where sexual misconduct is also alleged as having occurred in the same or related course of professional treatment, than the coverage that is provided where only non-sexual misconduct is claimed?

DECISION

CERTIFIED QUESTION NUMBER ONE.

CONCLUSION. No; it is not against the public policy of this state for an insurer to provide lesser coverage for a psychologist's sexual misconduct than it provides for the psychologist's nonsexual misconduct.

In general, it is against public policy to insure against liability arising from the intentional infliction of injury on the person of another.[3]

While it is undisputed that a psychologist's sexual contact with a client is wrongful and deemed unprofessional,[4] unethical,[5] and, in some cases, possibly criminal,[6] it also is

---

[2]The following questions are presented and discussed in reverse order to the questions certified.

[3]*Grange Ins. Co. v. Brosseau*, 113 Wn.2d 91, 98, 776 P.2d 123 (1989).

[4]RCW 18.130.180(24).

[5]WAC 246-924-351, -358(1).

[6]*See* RCW 9A.44.050(1)(d) (rape in the second degree).

clear that most courts which have considered the issue have ruled that sexual or erotic contact with a client is "malpractice" or "professional negligence" on the part of a psychologist or other mental health therapist.[7] The finding of professional negligence in such cases is based on the therapist's mishandling of the so-called "transference phenomenon".[8]

In many jurisdictions, insurance provisions excluding coverage for intentional or wrongful acts have been held to be ineffective to exclude claims based on sexual misconduct by a psychotherapist. These cases deem that the sexual misconduct is malpractice because a mishandling of the transference phenomenon is conduct which falls below the standard of care.[9]

This court has not determined whether sexual misconduct by psychologists is malpractice and we do not decide that issue in this case.[10] The parties do not argue this issue and the trial court's ruling that, in any event, the policy covers sexual misconduct was not challenged on appeal.

---

[7]*See, e.g., Sim mons v. United States*, 805 F.2d 1363, 1365 (9th Cir. 1986) (courts have uniformly regarded such sexual contact, occurring in the course of treatment, as malpractice or gross negligence); *Cotton v. Kambly*, 101 Mich. App. 537, 541, 300 N.W.2d 627 (1980); *St. Paul Fire & Marine Ins. Co. v. Love*, 459 N.W.2d 698, 702 (Minn. 1990); *L.L. v. Medical Protective Co.*, 122 Wis. 2d 455, 462, 362 N.W.2d 174 (Ct. App. 1984), *review denied*, 122 Wis. 2d 783 (1985); *St. Paul Fire & Marine Ins. Co. v. Mitchell*, 164 Ga. App. 215, 218-19, 296 S.E.2d 126 (1982); *Zipkin v. Freeman*, 436 S.W.2d 753, 761-62 (Mo. 1968).

[8]For a discussion of the transference phenomenon, *see Simmons v. United States*, 805 F.2d 1363, 1365 (9th Cir. 1986); Linda Jorgenson et al., *The Furor Over Psychotherapist-Patient Sexual Contact: New Solutions to an Old Problem*, 32 Wm. & Mary L. Rev. 645, 653-57 (1991); Jordana B. Glasgow, Note, *Sexual Misconduct by Psychotherapists: Legal Options Available to Victims and a Proposal for Change in Criminal Legislation*, 33 B.C. L. Rev. 645, 650-52 (1992).

[9]*See, e.g., St. Paul Fire & Marine Ins. Co. v. Love*, 459 N.W.2d at 702.

[10]In *Omer v. Edgren*, 38 Wn. App. 376, 685 P.2d 635 (1984), the Court of Appeals held that a patient of a psychiatrist had a cause of action for damages based on the psychiatrist's sexual contact with her. *See also Washington Ins. Guar. Ass'n v. Hicks*, 49 Wn. App. 623, 627-28, 744 P.2d 625 (1987) (sexual misconduct of chiropractor is not malpractice; malpractice occurs only where health care provider is a mental health therapist or psychiatrist who mishandles the transference phenomenon).

The client involved here claims the sublimit contained in her psychologist's insurance policy is against public policy and therefore void because it discriminates against women. The client reasons that since the majority of persons claiming to be injured by the sexual misconduct of psychotherapists are women,[11] more women than men are affected by the policy's sublimit, and the sublimit thus has a disparate impact upon women.[12] According to the client, this discriminatory effect violates public policy.

The insurer does not dispute that the provisions challenged here may have the effect of limiting coverage more often in actions involving female plaintiffs than male plaintiffs. However, the insurer argues that the policy provision is gender neutral, applying with equal force to all insured psychologists, and that its indirect impact upon an injured client is the same, whether the client is male or female. The question here is whether that indirect impact, falling more heavily upon women than men, violates public policy, thus rendering the coverage limits void.

■ Washington courts rarely invoke public policy to override express terms of an insurance policy.[13] We recently held that

> "limitations in insurance contracts which are contrary to public policy and statute will not be enforced, but otherwise insurers are permitted to limit their contractual liability." Washington courts have hesitated to "invoke public policy to limit or avoid express contract terms absent legislative action." Where

---

[11]Approximately 90 percent of the victims of sexual misconduct on the part of therapists are women. Jacqueline Bouhoutsos et al., *Sexual Intimacy Between Psychotherapists and Patients*, 14 Professional Psychology: Research & Practice No. 2, at 185, 188 (1983); Kenneth S. Pope & Valerie A. Vetter, *Prior Therapist-Patient Sexual Involvement Among Patients Seen by Psychologists*, 28 Psychotherapy 429, 433 (1991).

[12]The theory of disparate impact is generally applied in the employment setting and differs from disparate treatment. In the latter case, an individual would be *treated* differently because of sex, race, age or some other improper differentiation. In cases involving disparate impact a facially neutral policy or practice would result in discrimination because of sex, race, age or other improper distinction. *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 909, 726 P.2d 439 (1986).

[13]*Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 876 n.1, 784 P.2d 507, 87 A.L.R.4th 405 (1990).

appropriate, though, public policy has been invoked to invalidate insurance contract provisions.

Public policy is not a precisely defined term, and, in fact, may not be amenable to an exact definition. The court has said that generally a contract does not violate public policy where it is not "prohibited by statute, condemned by judicial decision, or contrary to the public morals . . .".

(Citations omitted.) *Brown v. Snohomish Cy. Physicians Corp.*, 120 Wn.2d 747, 753, 845 P.2d 334 (1993) (quoting *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 481, 687 P.2d 1139 (1984)).[14]

We have found coverage exclusions or limitations contained in insurance policies to be contrary to public policy in two well defined areas. One relates to underinsured motorist insurance (UIM) coverage authorized under RCW 48.22.030; the other involves the Financial Responsibility Act, RCW 46.29. In each of those areas this court found a legislative expression favoring financial compensation for injuries suffered by innocent victims of automobile accidents.[15]

This court has declined to extend the holding in the UIM and financial responsibility cases to other areas. Thus the court refused to hold that a family exclusion clause in a homeowner's liability policy was void on public policy grounds in *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 687 P.2d 1139 (1984). We held there that the public policy so convincingly expressed in the Financial Responsibility Act, RCW 46.29, and relied upon in *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 643 P.2d 441 (1982) (*Wiscomb II*), was not present in the case of homeowner responsibilities. Without statutory evidence of a public policy, we declined to override the contract "even though its terms may be harsh and its necessity doubtful."[16] The court then stated:

---

[14]*See also Publi c Employees Mut. Ins. Co. v. Hertz Corp.*, 59 Wn. App. 641, 643, 800 P.2d 831 (1990), *review denied*, 116 Wn.2d 1013 (1991).

[15]*Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 643 P.2d 441 (1982) (*Wiscomb II*); *Brown v. Snohomish Cy. Physicians Corp.*, 120 Wn.2d 747, 756-57, 845 P.2d 334 (1993); *Schab v. State Farm Mut. Auto. Ins. Co.*, 41 Wn. App. 418, 423, 704 P.2d 621 (1985).

[16]*State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 483, 687 P.2d 1139 (1984).

While we are not unmindful that serious and costly accidents occur in the home, and that innocent victims may be left without meaningful compensation in the absence of insurance, we do not perceive the same level of concern for financial compensation by negligent homeowners as exists for negligent automobile owners and users.

Absent prior expression of public policy from either the Legislature or prior court decisions, our inquiry as to whether the family exclusion clause clearly offends the public good must be answered in the negative.

*Emerson*, 102 Wn.2d at 483.

■ Because public policy is generally determined by the Legislature and expressed through statutory provisions,[17] the proper starting place for a public policy analysis is in applicable legislation.[18]

■ Unlike the law requiring compensation of victims of automobile accidents, there is no Washington statute that expressly or impliedly requires financial compensation for injuries resulting from a psychologist's sexual misconduct — or for any other injury resulting from the psychologist-client relationship.

There also is no Washington statute requiring psychologists to carry malpractice insurance.[19] RCW 18.83.050(6) provides that the examining board of psychology *may* require psychologists licensed by the State to maintain a reasonable amount of professional liability insurance.[20] The examining board has not yet required such insurance.[21]

---

[17]*Mutual of Enumclaw Ins. Co. v. Wiscomb*, 95 Wn.2d 373, 378, 622 P.2d 1234 (1980) (it is not the function of the judiciary to determine public policy; that function rests exclusively with the legislative branch of government), *adhered to on rehearing*, 97 Wn.2d 203, 643 P.2d 441 (1982).

[18]*Wiscomb II*, 97 Wn.2d at 206.

[19]Some insurance coverage may be required of psychologists in the future, however. RCW 18.130.330 (Laws of 1994, ch. 102, § 1, p. 559) (pursuant to regulations to be developed by the State Department of Health, some health care providers will be required to maintain a minimum level of malpractice insurance beginning July 1995). Interpretation of that statute is not before us in the present case.

[20]The authority to require liability insurance has been a part of the statute since 1986. The statute was amended by the Laws of 1994, ch. 35, § 2, p. 113, but the amendment is not applicable here.

[21]*See generally* WAC 246-924 .

A number of statutes make it clear that a psychologist's sexual contact with a client is improper, however. Psychologists must be licensed pursuant to RCW 18.83. RCW 18.83.121(2) provides that the examining board of psychology may take disciplinary action against a psychologist who violates the ethical code created by the examining board. The ethical code, in turn, states in part that a psychologist shall *never* engage in sexual contact or sexual activity with current clients.[22]

Disciplinary action may be taken pursuant to the uniform disciplinary act governing health professions,[23] but none of the discipline alternatives allows for compensation of an injured client, beyond the refunding of fees.[24]

In sum, there is no Washington statute or regulatory provision which directly or impliedly expresses a concern on the part of the Legislature that clients injured by the unprofessional conduct of their psychologists be compensated for those injuries through insurance coverage.

One Washington Court of Appeals decision indicated that it is in the public interest to permit victims to pursue civil remedies for sexual misconduct against their therapists. That case, however, did not address insurance coverage.[25]

There are laws aimed at protecting women and minority classes from discriminatory treatment, thus evidencing a public policy against discrimination in certain circumstances. One example is RCW 49.60, this state's Law Against Discrimination. That statute defines unfair practices with respect to insurance transactions as follows:

> It is an unfair practice for any person whether acting for himself, herself, or another in connection with an insurance transaction . . . *to cancel or fail or refuse to issue or renew*

---

[22]WAC 246-924-358(1) (effective Apr. 10, 1993). *See also* RCW 18.130.180(24) (abuse of or sexual contact with a client by a health care provider constitutes unprofessional conduct).

[23]RCW 18.130.

[24]The discipline alternatives available to the examining board of psychology are listed in RCW 18.130.160.

[25]*Omer v. Edgren*, 38 Wn. App. 376, 379, 685 P.2d 635 (1984).

*insurance* . . . to any person because of sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical disability . . ..

(Italics ours.) RCW 49.60.178.

This state's insurance code, RCW Title 48, further prohibits discrimination as follows:

No person or entity engaged in the business of insurance in this state shall refuse to issue any contract of insurance or cancel or decline to renew such contract because of the sex or marital status, or the presence of any sensory, mental, or physical handicap *of the insured or prospective insured.* The amount of benefits payable, or any term, rate, condition, or type of coverage shall not be restricted, modified, excluded, increased or reduced on the basis of the sex or marital status, or be restricted, modified, excluded or reduced on the basis of the presence of any sensory, mental, or physical handicap *of the insured or prospective insured.* Subject to the provisions of subsection (2) of this section [dealing with disability policies] *these provisions shall not prohibit fair discrimination on the basis of sex, or marital status, or the presence of any sensory, mental, or physical handicap when bona fide statistical differences in risk or exposure have been substantiated.*

(Italics ours.) RCW 48.30.300(1).[26]

This statute's focus is to protect "the insured or prospective insured", as opposed to third parties who may benefit from the insurance agreement, and does not require the insurance company to determine the potentially discriminatory impact of each coverage provision upon all possible claimants.

However, the statute does demonstrate that the Legislature is concerned about protecting certain classes of individuals from unfair or irrational discrimination in the insurance setting. This policy is reflected, as well, in RCW 48.18.480 and in appellate court decisions.[27]

---

[26]*See also* RCW 48.18.480 (prohibiting discrimination between insured or subjects of insurance having substantially like insuring, risk, and exposure factors, and expense elements); *Edwards v. Farmers Ins. Co.,* 111 Wn.2d 710, 763 P.2d 1226 (1988) (although insurance provision discriminated against an insured on the basis of marital status, the policy would not violate the insurance statute if the discrimination was "fair").

[27]*Eurick v. Pemco Ins. Co.,* 108 Wn.2d 338, 343-44, 738 P.2d 251 (1987) (exclusions that have been held violative of public policy generally have been those manifesting no relation to any increased risk faced by the insurer, or when

Thus, if the sole basis for a limitation of coverage were membership in a protected class, the insurance provision would violate public policy. The limitation here, however, is not based solely on the fact that the majority of claimants under the policy are women. It appears that a significant percentage of claims against psychologists are based on sexual misconduct. One estimate is that half of all claims against psychologists are based on claims of sexual misconduct.[28]

■ The sublimit imposed under the policy involved here is related to an identifiable risk to the insurer and is not in conflict with any public policy mandating full compensation or insurance coverage. We cannot find that the sublimit contained in the insurance policy clearly offends the public good.[29]

■ Amici Northwest Women's Law Center, NOW Legal Defense and Education Fund, Stop Abuse by Counselors, and Boston Associates to Stop Treatment Abuse ask this court to declare the "fair discrimination" provision of the insurance statute, RCW 48.30.300, unconstitutional as it relates to sex and to strike the word "sex" from the statute. Amici argue that the statute violates our state constitution's Equal Rights Amendment, Const. art. 31, § 1. We do not find the statute directly applicable here and, therefore, we do not consider this issue. These amici further argue that the insurance contract itself unconstitutionally discriminates against women. Ordinarily appellate courts will not consider an issue that has been raised only by amici,[30] and we decline to consider the issue on that basis.

innocent victims have been denied coverage for no good reason); *Public Employees Mut. Ins. Co. v. Hertz Corp.*, 59 Wn. App. 641, 644, 800 P.2d 831 (1990), *review denied*, 116 Wn.2d 1013 (1991).

[28]Linda Jorgenson et al., *Therapist-Patient Sexual Exploitation and Insurance Liability*, 27 Tort & Ins. L.J. 595, 597 n.8, 599 n.27 (1992).

[29]*State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 483, 687 P.2d 1139 (1984).

[30]*Tacoma v. Luvene*, 118 Wn.2d 826, 832, 827 P.2d 1374 (1992); *Coburn v. Seda*, 101 Wn.2d 270, 279, 677 P.2d 173 (1984); *Pickett v. Stephens-Nelsen, Inc.*, 43 Wn. App. 326, 335, 717 P.2d 277 (1986).

CERTIFIED QUESTION NUMBER TWO.

CONCLUSION. Yes; it is against the public policy of this state for an insurer to provide lesser coverage for a psychologist's nonsexual misconduct, where sexual misconduct is also alleged as having occurred in the same or related course of professional treatment, than the coverage that is provided where only nonsexual misconduct is claimed.

In addition to the $25,000 sublimit imposed on liability for damages related to sexual misconduct, the insurance policy involved here imposes the limit upon *all* claims, whether related to sexual misconduct or not, once sexual misconduct is alleged "at any time, either in a complaint, during discovery, at trial or otherwise".

■■ The effect of this provision is to limit all recovery of clients who are injured by the sexual misconduct of their psychologists. This is so even if a client does not include a claim of sexual misconduct as part of a malpractice action against the psychologist. The entire recovery would be limited to $25,000 if the client — or, presumably, another person — alleged any actual, attempted or proposed erotic physical contact by the psychologist or "any other person for whom the Insured may be legally liable". The allegation could be made "at any time" and does not have to be made during or in the course of the legal proceeding.

Thus it would be against the client's interest to report sexual misconduct to the examining board for discipline under RCW 18.130.080, or to a prosecutor for criminal action pursuant to RCW 9A.44.050(1)(d), or to ask the court for injunctive relief under RCW 18.130.185, if the client intended to bring a malpractice action based on nonsexual misconduct. A claimant for damages based on alleged malpractice would be in a better position, under this policy, if coverage for sexual misconduct claims were excluded entirely. There is a clear disincentive for reporting the unethical and harmful conduct of an insured psychologist, even though such reporting would benefit the public by helping to prevent future acts of sexual misconduct in other therapeutic relationships.

This state's statutes express a clear public policy in favor of putting an end to unethical and unprofessional behavior on the part of therapists. For example, psychologists practicing in this state must be licensed in order to "safeguard the people of the state of Washington from the dangers of unqualified and improper practice of psychology".[31] RCW 18.83.121(2) authorizes the examining board of psychology to take disciplinary action against any psychologist for violating the psychologist's ethical code. Discipline may include suspension or revocation of the psychologist's license, monitoring, restricting or limiting the psychologist's practice, requiring treatment or education of the psychologist, fines, censure or reprimand.[32]

Additionally, an injunctive action may be brought by any person, in the name of the State of Washington, to enjoin the unprofessional conduct of a psychologist.[33] This injunctive relief is in addition to any criminal prosecution or disciplinary action that may be pursued.[34]

Further, if the disciplining authority determines or has cause to believe that a crime has been committed by a psychologist, it is required to notify the Attorney General or the county prosecuting attorney of that fact.[35] Sexual intercourse between a psychologist and client may, under RCW 9A.44.050(1)(d), be rape in the second degree.[36]

The Legislature has clearly expressed its intent to halt and to punish unethical and unprofessional sexual misconduct by psychologists through administrative disciplinary proceedings, injunctive actions, and criminal prosecutions.

---

[31] RCW 18.83.020(1).

[32] RCW 18.130.160 (part).

[33] RCW 18.130.185.

[34] RCW 18.130.185.

[35] RCW 18.130.210.

[36] This subsection of RCW 9A.44.050 was enacted in 1993, after the misconduct is alleged to have occurred in this case. *See also State v. Gellerman*, 42 Wn.2d 742, 259 P.2d 371 (1953).

The insurance provision at issue here, by penalizing those clients who report the sexual misconduct of their psychologists, impedes an important legislative goal and thus violates the public policy of this state.

We have considered the remaining arguments raised by the parties and deem them to be nonmeritorious.

To summarize. We hold that the coverage limits placed on claims involving sexual misconduct on the part of an insured psychologist do not violate the public policy of this state. The expansion of that coverage limit, however, to include claims of malpractice which do not involve the psychologist's sexual misconduct violates public policy in that it discourages injured clients from taking advantage of protective statutes aimed at stopping therapist misconduct so that other clients will be protected from unethical, unprofessional and harmful conduct of offending psychologists.

UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.