OPINION OF THE COURT
Barbara R. Kapnick, J.
This declaratory judgment action arises out of a malpractice action brought by Randy Kamhi against the Center for Adults Sexually Abused as Children (the Center), Rory M. McDonald, M.S.W., and Helene Ina Anisfeld, C.S.W., individually, and as partners in the Center. The underlying action, Kamhi v Mc *717 Donald (index No. 100599/95), is currently pending before this court.
Plaintiff American Home Assurance Company now moves pursuant to CPLR 3212 for summary judgment. Defendant Randy Kamhi cross-moves for an order directing American Home to comply with her outstanding discovery demands, and staying any further application by American Home for summary judgment until a full and complete record exists and until American Home has fully complied with all of Kamhi’s discovery demands. (See, e.g., Statt v American Home Assur. Co., 191 AD2d 962 [4th Dept 1993].)
There is no dispute that American Home issued a professional liability policy to defendant Rory M. McDonald, a licensed social worker, for the period from September 1, 1975 through September 1, 1976, and that the policy was renewed annually through September 1994.[1] American Home also issued a professional liability policy to another licensed social worker, Helene Ina Anisfeld (Anisfeld), for the period from May 1, 1981 through May 1, 1982, and said policy was renewed annually through May 1994.
Each of these policies provides for $1,000,000 in coverage for each claim, subject to the following exclusion:
“Sexual Misconduct — The total limit of the Company’s liability hereunder shall not exceed $25,000 in the aggregate for all damages with respect to the total of all claims against any Insured(s) involving any actual or alleged erotic physical contact, or attempt thereat or proposal thereof:
“(a) by any Insured or by any other person for whom any Insured may be legally liable; and
“(b) with or to any former or current patient or client of any Insured, or with or to any relative of or member of the same household as any said patient or client, or with or to any person with whom said patient or client or relative has an affectionate personal relationship.
“In the event any of the foregoing are alleged at any time, either in a complaint, during discovery, at trial or otherwise, any and all causes of action alleged and arising out of the same or related courses of professional treatment and/or relationships shall be subject to the aforesaid $25,000 aggregate limit of liability and to all other provisions of this clause. The aforesaid *718 $25,000 aggregate limit of liability shall be part of, and not in addition to, the limits of liability otherwise afforded by this policy.
“The Company shall not be obligated to undertake nor continue to defend any suit or proceeding subject to the aforesaid $25,000 aggregate limit of liability after said $25,000 aggregate limit of liability has been exhausted by payments for damages.”
In addition, the first page of the insurance policies provides in relevant part that: “notice: the limits of liability available TO PAY JUDGEMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. FURTHER NOTE THAT AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT. NOTE ALSO THAT A SMALLER LIMIT OF LIABILITY APPLIES TO JUDGEMENTS OR SETTLEMENTS WHEN THERE ARE ALLEGATIONS OF SEXUAL MISCONDUCT (SEE THE SPECIAL PROVISION ‘SEXUAL MISCONDUCT’ IN THE POLICY).”
The policies also contain a separate exclusion applicable “(q) to fines or penalties or punitive, exemplary or multiplied damages; however, where permitted by law, this policy shall cover, subject to all terms, conditions and exclusions contained herein, up to $25,000 punitive, exemplary or multiplied damages as part of and not in addition to the limits of the Company’s liability otherwise afforded by this policy, (including, but not limited to, the $25,000 aggregate sublimit of liability set forth in Special Provisions 1, Sexual Misconduct).”
American Home now moves for summary judgment declaring that (i) pursuant to the sexual misconduct provision of the policies, American Home’s duty to indemnify its insureds, McDonald and Anisfeld, is limited to $25,000 each for all claims asserted against McDonald and Anisfeld by Kamhi in the underlying action; (ii) as soon as American Home makes payment of $25,000 in defense costs or in settlement or satisfaction of Kamhi’s claims against McDonald, American Home has no further duty to defend McDonald in the underlying action; and (iii) as soon as American Home makes payment of $25,000 in defense costs or in settlement or satisfaction of Kamhi’s claims against Anisfeld, American Home has no further duty to defend Anisfeld in the underlying action.
In the event the court determines that the sexual misconduct provision is not applicable to all of the claims against McDonald and Anisfeld in the underlying action, American Home seeks a declaration that its duty to indemnify McDonald and Anisfeld for punitive damages for all claims asserted in the underlying *719 action is limited to $25,000 for McDonald and $25,000 for An-isfeld.
There is no dispute that McDonald was Kamhi’s therapist from approximately January 1992 through July 1994, although the parties to the underlying action disagree on the question of whether Kamhi was McDonald’s private patient or whether she was also a patient of the Center.[2]
Kamhi alleges in the underlying action that McDonald was negligent and careless in the counseling and psychotherapy services he rendered to her during the period of their counseling relationship. Neither the complaint nor the bill of particulars in the underlying action explicitly refers to a sexual relationship between McDonald and Kamhi.
However, American Home has annexed copies of records produced by therapists Kamhi visited after her therapist/ patient relationship with McDonald was terminated, which reveal that Kamhi complained about her sexual relationship with McDonald and his sexual abuse of her while she was his patient. Plaintiff also argues that in her verified bill of particulars in the underlying malpractice action, Kamhi employs the standard terms for the type of malpractice that is said to occur when a therapist has sexual relations with his patient, such as the mishandling of the transference and counter-transference phenomena, and the failure to maintain professional boundaries.
In addition, at her deposition in the underlying action, Ka-mhi testified in explicit detail regarding the sexual relations she had with McDonald during the course of their therapist/ client relationship.
Moreover, in a handwritten letter dated May 26, 1994, McDonald admits to the sexual relationship, and states that “[a]t my manipulation of her pain and issues we entered into a sexual relationship that lasted until approx. April of 1994. She was in no way responsible for anything that happened. The responsibility is totally mine. I hid the relationship from my partner and colleagues who had no idea of what was occurring. I fully acknowledge that anything [Kamhi] states that happened is entirely true. I confess to total responsibility and guilt for what happened.”
*720 Kamhi concedes that Anisfeld neither counseled her nor did they even meet. However, Kamhi claims that Anisfeld, as defendant McDonald’s partner in the Center, is vicariously liable for McDonald’s tortious conduct, and that Anisfeld, as codirector of the Center, is liable for her own acts and omissions, including her failure to exercise reasonable care in the running of the Center, her failure to promulgate rules, regulations, and procedures for proper supervision and review of therapists at the Center, her failure to guard against boundary violations occurring at the Center, and her failure to become aware of what was occurring between McDonald and Kamhi at the Center for a period of more than two years.
Defendant Kamhi argues in opposition to the motion for summary judgment that the terms of the sexual misconduct provision are ambiguous. However, this court finds no ambiguity in the terms of the provision with respect to defendant McDonald, since under any definition, at least some of the behavior he is alleged to have engaged in with Kamhi constitutes “erotic physical contact.” In addition, said contact was “by any Insured” (namely, McDonald) and “with or to any former or current patient or client of any Insured” (namely, McDonald’s patient, Kamhi).
“As in the construction of contracts generally, including insurance contracts particularly, [courts must] give unambiguous terms their plain and ordinary meaning.” (Teichman v Community Hosp., 87 NY2d 514, 520 [1996]; see also, West 56th St. Assocs. v Greater N. Y. Mut. Ins. Co., 250 AD2d 109 [1st Dept 1998].)
“This court may not make or vary the contract of insurance to accomplish its notions of abstract justice or moral obligation, since ‘[e]quitable considerations will not allow an extension of the coverage beyond its fair intent and meaning in order to do raw equity and to obviate objections which might have been foreseen and guarded against’ [citations omitted].” (Breed, v Insurance Co., 46 NY2d 351, 355 [1978]; see also, Matter of Caruso v Ward, 146 AD2d 22 [1st Dept 1989].)
Therefore, the unambiguous terms of the provision limiting McDonald’s coverage under the policy to $25,000 for all of Ka-mhi’s claims against him must be given their plain and ordinary meaning.
However, defendant Kamhi further argues in opposition to the motion for summary judgment that the policies should be deemed null and void on the grounds that they are contracts of adhesion, are oppressive and unconscionable, and conflict with the reasonable expectations of the insureds.
*721 In addition, defendant Kamhi argues that the sexual misconduct provision of the policies in question violates the public policy of the State of New York on the grounds that it: (i) fails to protect patients from sexual exploitation by their therapist; (ii) may have a disparate impact upon women, since statistically women are the victims of sexual exploitation by their therapists in greater numbers than men; (iii) circumvents New York’s recognition that there may be concurrent proximate causes of an injury; and (iv) it limits coverage of a therapist’s nonsexual misconduct when sexual misconduct occurred in the same or related course of professional treatment, even though the sexual misconduct may be immaterial to the nonsexual claims asserted.
Similar arguments as to identical or virtually identical sexual misconduct provisions have been rejected by State and Federal courts in several jurisdictions, including recently by another court of this State. (See, American Home Assur. Co. v Levy, 179 Misc 2d 773 [Sup Ct, Suffolk County 1999].)
Defendant Kamhi argues that the sexual misconduct provision is void as a contract of adhesion because the policy was drafted by the insurer. However, no proof has been submitted to demonstrate that McDonald was unaware of the terms and conditions of his policy concerning coverage of sexually related activities.
Kamhi further argues that the policy provision is void on the ground of unconscionability. However, Kamhi, “who is not a party to the contract, is without standing to raise a claim of unconscionability or a claim based upon the terms or bargaining conditions of the contract.” (American Home Assur. Co. v Levy, supra, at 782; see also, 527-9 Lenox Ave. Realty Corp. v Ninth St. Assocs., 200 AD2d 531 [1st Dept 1994]; County of Tioga v Solid Waste Indus., 178 AD2d 873 [3d Dept 1991].)
Moreover, “[a] determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made” (Gillman v Chase Manhattan Bank, 73 NY2d 1, 10 [1988]). It “requires some showing of ‘an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party’ [citation omitted].” (Matter of State of New York v Avco Fin. Serv., 50 NY2d 383, 389 [1980].)
Here, the terms of the sexual misconduct provision, which have been approved by the Superintendent of Insurance and the National Association of Social Workers (see, American *722 Home Assur. Co. v Levy, supra, at 781), are not “unreasonably favorable” to Aanerican Home. (See, McConaghy v RLI Ins. Co., 882 F Supp 540 [ED Va 1995].) In addition, nothing in the papers submitted suggests that the insureds lacked a meaningful choice in entering into the insurance policies and/or that the insureds were the victims of deceptive or high pressure tactics. (See, Gillman v Chase Manhattan Bank, supra, at 11.)
“The fact that the provision happens to benefit the carrier in this particular instance is not a ground for this Court to set aside the contract provision as unconscionable [citation omitted].” (Allstate Ins. Co. v Jacobs, 208 AD2d 578, 579 [2d Dept 1994]; see also, Matter of Allstate Ins. Co. v Balsamello, 227 AD2d 616 [2d Dept 1996].)
Kamhi cross-moves for an order compelling American Home to produce outstanding discovery, including the relevant insurance agreements, face sheets, endorsements, amendments, and certificates issued by American Home to McDonald and Anis-feld. American Home, however, represents that complete copies of all the policies for the relevant periods have been produced.
Kamhi also cross-moves for the production of advertisements and brochures disseminated by American Home regarding social worker professional liability policies, arguing that such documents would enable her to learn what McDonald and An-isfeld were told about any limitations in their policies when they purchased and renewed them, and allow her to assess the reasonable expectations of McDonald and Anisfeld regarding the coverage afforded by their policies.
However, “using extrinsic evidence to interpret a written contract is only proper when the evidence is ‘relevant to prove a meaning to which the language of the instrument is reasonably susceptible.’ ” (American Home Assur. Co. v Bylund, 1992 WL 691795, 4 [CD Cal, Feb. 4, 1992, Marshall, J.]; see also, American Home Assur. Co. v Levy, 179 Misc 2d, supra, at 789.)
Since this court has already ruled that the language of the policy is not susceptible to alternative interpretations, and that the court must enforce the terms as written (see, West 56th St. Assocs. v Greater N. Y. Mut. Ins. Co., 250 AD2d, supra, at 112), Kamhi’s cross motion for an order directing American Home to comply with her discovery demands seeking extrinsic evidence as to the parties’ understandings and expectations must be denied.
This court thus turns its attention to Kamhi’s argument that the policies in question violate public policy.
*723 In order for a court to find an insurance clause violative of public policy, the particular provision must violate a statutory mandate or prohibition or a regulation of the Superintendent of Insurance. (Loring & Assocs. v Continental Cas. Co., 56 NY2d 848 [1982].)
In this case, plaintiff argues that there has been no showing that the sexual misconduct provision of the policies violates any statutory mandate or prohibition and/or regulation of the Superintendent of Insurance, and notes that this provision was approved by the Superintendent of Insurance.
There is no doubt that New York, like all States, has a policy of protecting patients from sexual misconduct and exploitation by therapists. However, simply because New York has an interest in protecting the public from, and possibly compensating the victims of, sexual exploitation by therapists, it need not be inferred that public policy dictates that insurers should be precluded from limiting their coverage for liability arising out of the insured therapist’s misconduct. (See, American Home As-sur. Co. v Stone, 61 F3d 1321 [7th Cir 1995]; American Home Assur. Co. v Smith, 218 Ga App 536, 462 SE2d 441 [1995]; Chicago Ins. Co. v Manterola, 191 Ariz 344, 955 P2d 982 [1998].)
Significantly, New York does not require therapists to obtain any form of malpractice insurance. (See, American Home As-sur. Co. v Levy, supra, at 783.) Since therapists in New York are not required to purchase even a minimum level of coverage, this court declines to find it a violation of public policy for an insurance policy to offer varying amounts of coverage depending on the type of claim asserted.
Defendant Kamhi further argues that the sexual misconduct provision violates public policy on the ground that it impermis-sibly discriminates against women. However, this court agrees with the opinion of the Seventh Circuit Court of Appeals which found that “the insurance policy at issue is neutral on its face, is applied without regard to the sex of the insured, and legitimately limits coverage for the undisputed higher risks involved in psychotherapists’ practice.” (American Home Assur. Co. v Stone, supra, at 1331; see also, American Home Assur. Co. v Cohen, 124 Wash 2d 865, 877-878, 881 P2d 1001 [1994].) Therefore, this court rejects the argument that the policies in question are void simply because more women may be affected as third-party beneficiaries of the insurance policies.
In addition, defendant Kamhi argues that the sexual misconduct provision is contrary to public policy because it *724 fails to recognize that there may be concurrent causes of the patient’s injury, since it not only sets a lower coverage limit for allegations of sexual misconduct, but also limits coverage for all claims of malpractice once sexual misconduct is alleged.
The court in American Home Assur. Co. v Levy (supra, at 788) rejected this argument, holding that “the concurrent proximate cause theory has no role because the sexual misconduct provision does not purport to reduce liability solely for damages caused by the insured’s sexual misconduct; but rather by the unambiguous terms of the provision the $25,000 limit is triggered whenever the malpractice suit against the insured involves any actual or alleged erotic physical contact, with the limit applying to any and all causes of action arising out of the same professional relationship (see, American Home Assur. Co. v Stone, 61 F3d 1321, supra).”[3]
Similarly, in addressing an almost identical provision, the Supreme Court of Texas held that it was not against its State’s “public policy for an insurer to limit coverage for a therapist’s non-sexual misconduct because sexual misconduct is alleged to have occurred in the same or related course of professional treatment, even though such sexual misconduct is immaterial to the non-sexual misconduct claims asserted.” (American Home Assur. Co. v Stephens, 982 SW2d 370 [Tex 1998].)
Likewise, the Seventh Circuit upheld an almost identical exclusion, finding that “[t]he ‘Sexual Misconduct’ provision can be considered a legitimate effort by American Home to offer a reasonably priced insurance policy and at the same time limit its exposure to a substantial hazard or risk of loss. This is true especially in light of the potentially large jury verdicts that often result from suits involving the emotionally charged subject of sexual exploitation by a psychotherapist * * * For the vast majority of mental health professionals who never engage in sexual exploitation of their patients, this kind of insurance policy fills an important gap in the marketplace. Voiding the ‘Sexual Misconduct’ provision may produce the unintended result of requiring the well-behaving majority to *725 subsidize the misconduct of a few, and increasing health care cost.” (American Home Assur. Co. v Stone, 61 F3d, supra, at 1326.)
However, in a similar case involving virtually the identical policy limitations, American Home Assur. Co. v Cohen (supra), the Supreme Court of the State of Washington found persuasive the argument that the provision limiting coverage for all claims of malpractice once sexual misconduct is alleged violates public policy.
Although the court found that the coverage limits placed on claims involving sexual misconduct on the part of an insured psychologist did not violate Washington’s public policy, it held that the expansion of that coverage limit “to include claims of malpractice which do not involve the psychologist’s sexual misconduct violates public policy in that it discourages injured clients from taking advantage of protective statutes aimed at stopping therapist misconduct so that other clients will be protected from unethical, unprofessional and harmful conduct of offending psychologists.” (American Home Assur. Co. v Cohen, supra, 124 Wash 2d, at 881, 881 P2d, at 1010.)[4]
This court adopts the reasoning of the Washington Supreme Court, since otherwise the effect of the provision in question in this case would be to create “a clear disincentive for reporting the unethical and harmful conduct of an insured psychologist, even though such reporting would benefit the public by helping to prevent future acts of sexual misconduct in other therapeutic relationships.” (American Home Assur. Co. v Cohen, supra, 124 Wash 2d, at 879, 881 P2d, at 1009.)
Accordingly, this court holds that the expansion of the coverage limits placed on claims involving sexual misconduct on the part of an insured social worker to include claims of malpractice which do not involve the social worker’s sexual misconduct violates the public policy of the State of New York.
Although plaintiff contends that the sexual relationship between McDonald and Kamhi was “ ‘so intertwined with [the al *726 leged] malpractice as to be inseparable’ ” (Govar v Chicago Ins. Co., 879 F2d 1581, 1583 [8th Cir 1989]), several depositions in the underlying action remain outstanding.
Moreover, Ms. Kamhi has submitted an affidavit in opposition to the instant motion detailing therapy sessions involving the drinking of alcoholic beverages and the smoking of marihuana supplied by Mr. McDonald, which at least raises an issue of fact as to whether or not unprofessional conduct occurred separate and apart from the sexual misconduct.
With respect to defendant Anisfeld, American Home argues that the sexual misconduct provision which applies where the “erotic physical contact” is “by any other person [namely, McDonald] for whom any Insured [in this case, defendant Anis-feld] may be legally liable” (subpara [a]), “with or to any former or current patient or client of any Insured” (subpara [b]), has been triggered.
However, based on the papers submitted, this court cannot determine, as a matter of law, whether or not Kamhi was a client of the Center and, thus, whether or not defendant Anisfeld may be legally liable for McDonald’s erotic physical contact with Ms. Kamhi.
Moreover, the court rejects American Home’s contention that the conditions set forth in subparagraph (b) of the sexual misconduct provision have been satisfied with respect to defendant Anisfeld. Therefore, even assuming that Kamhi was a patient of the Center, the alleged erotic physical contact was not “with or to any former or current patient or client” of the “Insured,” defendant Anisfeld, individually.[5]
Thus, the plain language of the sexual misconduct provision of the policy will not allow plaintiff to cap its coverage as to defendant Anisfeld.[6]
The separate exclusion in both policies applicable to punitive, exemplary or multiplied damages does not violate any public policy and is, therefore, enforceable.
Accordingly, plaintiff’s motion for summary judgment is granted only to the extent that it is adjudged and declared that American Home’s duty to indemnify McDonald for all claims *727 asserted, against him in the underlying action, index number 100599/95, involving sexual misconduct only is limited to $25,000, and it is further adjudged and declared that American Home’s duty to indemnify McDonald for punitive, exemplary or multiplied damages awarded against him in the underlying action is limited to $25,000 (including, but not limited to, the $25,000 aggregate sublimit of liability for claims for sexual misconduct), and it is further adjudged and declared that American Home’s duty to indemnify Anisfeld for punitive, exemplary or multiplied damages awarded against her in the underlying action is limited to $25,000.
That portion of the motion seeking summary judgment declaring that as soon as American Home makes payment of $25,000 in defense costs or in settlement or satisfaction of Ka-mhi’s claims against McDonald, American Home has no further duty to defend McDonald in the underlying action is denied with leave to renew, if deemed appropriate, upon the completion of discovery in the underlying action.
The cross motion by Kamhi is granted only to the extent of staying any further application by American Home for summary judgment until all discovery in the Kamhi malpractice action is completed.

. Although defendant McDonald appeared for a hearing before this court on January 14, 1998, he has not served an answer to either the complaint or amended complaint in this action.

. Anisfeld alleges that Kamhi was not a patient of the Center, but was rather a private patient of McDonald, who had maintained his own, separate practice. According to Anisfeld, the Center has no records of any treatment of Kamhi and the Center never billed Kamhi or received any payment from her.

. The court denied American Home’s motion for summary judgment on the ground that the plaintiff in the underlying action had not alleged a sexual relationship during the time period of the patient/therapist relationship, but held that “[p]ursuant to the sexual misconduct provision, if at any time during further pleadings, pretrial discovery, trial or otherwise, [the plaintiff in the underlying action] alleges conduct on the part of [the therapist] which constitutes erotic physical contact, then the exposure to [American Home] will be limited to the $25,000 sublimit.” (American Home Assur. Co. v Levy, 119 Misc 2d, supra, at 790-791.)

. The Washington Supreme Court noted that Washington’s statutes relating to the licensing and discipline of psychologists expressed “a clear public policy in favor of putting an end to unethical and unprofessional behavior on the part of therapists.” (American Home Assur. Co. v Cohen, supra, 124 Wash 2d, at 880, 881 P2d, at 1009-1010.) Similarly, New York’s statutes and regulations require an applicant for a license as a “certified social worker” to “be of good moral character” (see, Education Law § 7704 [7]) and authorize disciplinary proceedings with respect to “conduct in the practice of a profession which evidences moral unfitness to practice the profession” (8 NYCRR 29.1 [b] [5]; see also, Education Law §§ 6508, 7703).

. Neither McDonald nor the Center was listed as an “Insured” or an “Additional Insured” in Anisfeld’s policy.

. Even if this court were to have found subparagraph (b) of the exclusionary clause to be ambiguous, any such ambiguity would “be construed against the insurer” (Ace Wire & Cable Co. v Aetna Cas. & Sur. Co., 60 NY2d 390, 398 [1983]).