**Michael L. McCONAGHY and Joseph A. McConaghy, Plaintiffs,**

v.

**RLI INSURANCE COMPANY, Defendant.**

**Civ. A. No. 94–1652–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

April 18, 1995.

---

Bruce B. McHale, Chamowitz & Chamowitz, Alexandria, VA, for plaintiffs.

Mary Jane Saunders, Arter & Hadden, Washington, DC, for defendant.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

Plaintiffs, formerly husband and wife, received marriage counseling and therapy from Betsy S. Haarmann, a Licensed Professional Counselor (L.P.C.) from 1985 through 1992. In late 1991, after approximately six years of allegedly negligent care and treatment, and while the McConaghys were still her patients, Haarmann began a romantic and sexual affair with Mr. McConaghy without the knowledge of Mrs. McConaghy. Plaintiffs brought a motion for judgment against Haarmann in the Circuit Court of Fairfax County, Virginia, alleging that while they were in counseling with Haarmann, she committed a number of acts amounting to negligence, breach of fiduciary duty, and intentional infliction of emotional distress. In each of the five counts of the motion for judgment, plaintiffs alleged that Haarmann committed numerous nonsexual acts of malpractice in addition to the malpractice associated with the sexual relationship Haarmann had with Mr. McConaghy.

Defendant, RLI, is Haarmann's professional liability insurer and is defending Haar-

mann. An impediment to settlement has been an insurance coverage dispute arising out of a special sublimit in the insurance policy which reduces coverage in cases involving sexual misconduct. This provision states:

> The total limit of the Company's liability under the certificate shall not exceed $50,-000 in the aggregate for all damages with respect to the total of all claims against the insured(s) involving any actual or alleged sexual physical contact, or attempt thereat or proposal thereof:
>
> (a) by the insured or by any other person for whom the insured may be legally liable; and
>
> (b) with or to any former or current patient or client of the insured, or with or to any relative of or member of the same household as any said patient or client, or with or to any person with whom said patient or client or relative has an affectionate personal relationship.

> In the event any of the foregoing are alleged at any time, either in a complaint, during discovery, at trial or otherwise, any and all causes of action alleged and arising out of the same or related courses of professional treatment and/or relationships shall be subject to the aforesaid $50,000 aggregate limit of liability and to all other provisions of this clause. The aforesaid $50,000 aggregate limit of liability shall be part of, and not in addition to, the limits of liability otherwise afforded by this certificate.

Plaintiffs filed a declaratory judgment action in this Court on December 15, 1994, seeking a declaration that the regular policy limit of $500,000 rather than the $50,000 sexual misconduct sublimit applies to those of their claims that do not involve sexual misconduct. Plaintiffs argue that the sublimit, operating as it does to limit *all* claims, whether sexual or nonsexual as long as sexual misconduct is alleged, is void as against the public policy of Virginia. RLI counterclaimed, seeking a declaration that there is no coverage beyond the policy's $50,000 sexual misconduct sublimit. This matter is now before the Court on defendant's motion for

summary judgment and plaintiffs' cross-motion for summary judgment.[1]

### Discussion

The legal question presented is whether the $50,000 sexual misconduct sublimit provision, which clearly limits recovery even for nonsexual professional misconduct any time that sexual misconduct is also alleged to have occurred, is contrary to public policy. Plaintiffs contend that it is and point to two negative implications of the provision. First, it may discourage the reporting of sexual misconduct by the injured party for fear of limiting civil recovery for nonsexual misconduct; and second, it may encourage sexual misconduct by the mental health professional as a way of limiting total liability for nonsexual misconduct. In addition to these possible negative side effects, the Court is deeply troubled by the apparent inequitable disparity in coverage—a person who has suffered more is able to recover less, while a person who has suffered less is able to recover more. In other words, a person who has been the victim of *both* nonsexual malpractice *and* sexual misconduct by the therapist or counselor, can only recover up to $50,000, whereas a person who has suffered only nonsexual malpractice without having been the victim of any sexual misconduct, can recover up to $500,000.

In spite of these concerns, the Court cannot declare this contract of insurance void as against public policy because there has not been a clear indication by either the Commonwealth's legislature or its courts disfavoring such limits on the amount of professional malpractice insurance coverage for mental health professionals who engage in sexual misconduct with their patients. *See American Home Assurance Co. v. Stone,* 864 F.Supp. 767, 777 (N.D.Ill.1994).

The parties have cited the Court to only two decisions, both from foreign courts, in which a similar sublimit was examined in light of a public policy argument. In *American Home Assurance Co. v. Cohen,* 815 F.Supp. 365 (W.D.Wash.1993), the court held that although the sublimit itself, (as applied to claims of sexual misconduct), was not against public policy, it was against public policy "for an insurer to provide lesser coverage for a psychologist's nonsexual misconduct, where sexual misconduct is also alleged to have occurred in the same or related course of professional treatment, than the coverage that is provided where only nonsexual misconduct is claimed." *American Home Assurance Co. v. Cohen,* 124 Wash.2d 865, 879, 881 P.2d 1001, 1009 (1994) (Washington Supreme Court answering public policy question on certification from the U.S. Court of Appeals for the Ninth Circuit). The regular policy limit of $1,000,000 was, therefore, held to apply to the plaintiffs' nonsexual claims, while the $25,000 sublimit was held to apply to the plaintiffs' claims of sexual misconduct.

When faced with the argument presented in the instant case and in *Cohen* that the sexual misconduct provision "may give victims of sexual exploitation the incentive to cover up claims of sexual misconduct which arise out of the same or related therapeutic treatment in which nonsexual misconduct has also occurred," Judge Williams in the Northern District of Illinois reached the opposite conclusion. *See American Home Assurance Co. v. Stone,* 864 F.Supp. 767, 775 (N.D.Ill. 1994).[2] While recognizing that the Illinois

---

1. On February 3, 1995, this Court heard argument on and denied defendant's motion to dismiss plaintiff's declaratory judgment action. *See Nautilus Ins. Co. v. Winchester Homes, Inc.,* 15 F.3d 371, 375, n. 3 (4th Cir.1994) ("A dispute between a liability insurer, its insured, and a third party with a tort claim against the insured over the extent of the insurer's responsibility for that claim is an 'actual controversy' within the meaning of the federal Declaratory Judgment Act, even though the tort claimant has not yet reduced his claim against the insured to judgment.") Also relevant to this Court's decision to entertain the declaratory judgment action was a stay of the state proceedings by the Circuit Court of Fairfax County to give the parties an opportunity to settle the case upon resolution of the coverage issue by the federal court. *See Michael McConaghy, et al. v. Betsy S. Haarmann,* No. 131514, Order Staying Proceedings (December 30, 1994) ("if there is a settlement herein following a resolution of the related case in the United States District Court for the Eastern District of Virginia captioned *McConaghy v. RLI Insurance Company,* Civil Action No. 94–1652–A, a dismissal shall be promptly entered herein; ....")

2. The federal district court in Illinois also noted that numerous other courts, while not consider-

Sexual Exploitation in Psychotherapy Act provided a clear expression of "a policy of protecting victims of sexual exploitation," *id.,* the court stressed that the act "makes no reference to the actions insurance companies should take to protect victims of psychotherapist sexual exploitation." *Id.* at 776. The court also noted that psychotherapists are not required by the state to obtain any form of professional liability insurance. *Id.* In declining to hold the policy language void as against public policy, the court concluded:

> Thus, Illinois has not expressly stated through statute or judicial decision that insurance provisions must be drafted to further th[e] policy [of protecting victims of psychotherapist sexual exploitation]. Moreover, as American Home notes, 'it does not follow that the best way to discourage such conduct is to ensure that its perpetrators are fully protected from adverse financial consequences.' (Footnote and internal citation omitted). Even if this court might favor a public policy which would expressly dictate insurance requirements, 'public policy must be clearly defined and dominant, and should not be gleaned from general considerations of supposed public interests.' (Internal citation omitted). Although this is a close question because of the troubling aspects of the policy, this court, sitting in diversity jurisdiction, declines to hold American Home's Sexual Misconduct provision void as against Illinois public policy in the absence of a more clear indication that insurance companies should be limited as to the amount or form of coverage they provide when sexual misconduct is alleged against a psychotherapist.

*Id.*

In general, courts may refuse to enforce a contract as written where enforcement would violate some explicit, well defined and dominant public policy. *St. Paul Mercury Ins. Co. v. Duke University,* 849 F.2d 133, 135 (4th Cir.1988). Whether a contract violates an explicit, well defined and dominant public policy "is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Id.*

The Virginia legislature has clearly expressed a policy against the type of behavior engaged in by the counselor in this case. In Va.Code § 54.1–2914(16), a health care provider is guilty of unprofessional conduct if he or she engages in sexual contact with a patient. Additionally, the Virginia Department of Health Professions Board of Professional Counselors, Regulations Governing the Practice of Professional Counseling (which are authorized under Va.Code § 54.1–2400(6)), state that "[e]ngaging in sexual intimacies with clients or former clients is strictly prohibited." VR560–01–02, § 6.1(B)(22). Despite these clear pronouncements of a policy against sexual misconduct by health care professionals and professional counselors in particular, the Virginia legislature has expressed no position regarding insurance coverage for victims of such sexual exploitation. Indeed, the Commonwealth of Virginia does not even require professional counselors to obtain any form of professional liability insurance.[3] *Cf. Stone,* 864 F.Supp. at 777.

While this Court is extremely troubled by the potentially unfair result that may occur to an injured plaintiff when the sexual misconduct sublimit is applied and the health care provider is judgment proof, the contract at issue does not so clearly contravene a public right as to permit this Court to strike

---

ing the public policy argument, have analyzed similar sexual misconduct provisions which limit or even totally exclude coverage for all claims when sexual misconduct is alleged, and have enforced the provisions. *See Govar v. Chicago Insurance Co.,* 879 F.2d 1581 (8th Cir.1989); *Chicago Ins. Co. v. Griffin,* 817 F.Supp. 861 (D.Haw.1993); *Cranford Ins. Co. v. Allwest Ins. Co.,* 645 F.Supp. 1440 (N.D.Cal.1986); *American Home Assurance Co. v. Oraker,* No. 90CV6483 slip op. (Colo.Dist.Ct. March 5, 1992). *But see Cohen,* 815 F.Supp. 365 (W.D.Wash.1993).

3. In contrast, *see* § 46.2–472 of the Virginia Code which requires minimum coverages for motor vehicle liability insurance policies and § 38.2–2206 on uninsured motorist coverage. Also, *compare Cohen,* 124 Wash.2d at 875, 881 P.2d at 1007, in which the Washington Supreme Court notes that a state statute, RCW 18.83.050(6), provides that the examining board of psychology may require psychologists licensed by the state to maintain a reasonable amount of professional liability insurance.

**544**

it down. " '[T]he usual and most important function of the courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape their obligations on the pretext of public policy, unless it clearly appears that they contravene public right or the general welfare.' " *St. Paul Mercury Ins. Co. v. Duke University,* 849 F.2d at 135; *accord Jessee v. Smith,* 222 Va. 15, 18, 278 S.E.2d 793, 795 (1981) ("[C]ourts are averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain.").

The sexual misconduct provision clearly expresses the intent of the parties to the contract and is not without its own rationale. "Obviously very large jury verdicts often result from trials involving the emotionally charged subject of sexual exploitation by a psychotherapist." *Stone,* 864 F.Supp. at 777, n. 17. The insurer, in exchange for payment of a low premium by the insured counselor, chooses to provide only limited indemnity for lawsuits containing any allegations of sexual misconduct. RLI has deliberately written its policy so that all counseling malpractice claims are subject to the $50,000 sublimit if sexual misconduct is involved in any way, even where the lawsuit contains other allegations of nonsexual malpractice. This is a rational choice for the insurer to make, because it is not unreasonable to anticipate that lawsuits involving sexual misconduct will typically involve allegations of other types of nonsexual negligence. *See Stone,* 864 F.Supp. at 773, n. 10 (citing Linda Jorgenson, *Therapist–Patient Sexual Exploitation and Insurance Liability,* 27 Tort & Ins.L.J. 595, 609–10 (1992) (citing empirical evidence that sexual misconduct cases do not occur in the absence of other types of negligence)). The insured counselor who agrees to such a provision and pays a low premium for this type of limited coverage recognizes that she may be personally liable for part of a significant judgment in cases where sexual misconduct is alleged. This is the nature of the bargain that was struck between RLI and Haarmann in this case. This Court declines to disturb that agreement in the absence of a clear indication from the Virginia legislature or the Supreme Court of Virginia that such a con-

tract contravenes a public right or the general welfare.

For the foregoing reasons, RLI's motion for summary judgment is GRANTED, and the McConaghys' cross-motion for summary judgment is DENIED, and a declaratory judgment is hereby entered in favor of the defendant, declaring that all claims by both plaintiffs are subject to the $50,000 sexual misconduct sublimit contained in the applicable insurance policies.