OPINION OF THE COURT
Alan D. Oshrin, J.
This is a declaratory judgment action brought by American Home Assurance Company (American Home), the insurance company that issued a social worker’s professional liability policy to the defendant Richard Levy (hereinafter Levy), a licensed social worker, that contained a limiting coverage in cases involving claims of sexual misconduct to $25,000. The plaintiff seeks to have the court enforce the sexual misconduct provision of the policy and thereby permitting the plaintiff to discontinue the defense of the defendant Levy in the underlying action after it has expended $25,000 in defense costs, and *776 declaring that the plaintiff has no further liability for indemnification for Levy regarding the underlying action once it has expended $25,000.
In the underlying action Pamela Damian (hereinafter Damian) alleges under the first cause of action that Levy was negligent in rendering services; negligent in heeding the plaintiffs condition; abusing, manipulating, or distorting the transference and countertransference that occurred during the course of treatment; negligently acting in a dual role with regard to the plaintiff; negligently taking advantage of the plaintiff as a consequence of services, care and treatment; negligently failing to refrain from instituting an improper relationship with the plaintiff; and negligently continuing an improper relationship with the plaintiff. Under the second cause of action Damian alleges that Levy failed to make the plaintiff aware of the risks and benefits of, and alternatives to, and the risks and benefits of such alternatives to treatments employed and that if fully informed the plaintiff would not have consented to the course of treatment which led to the mishandling, abusing, manipulating or distorting of the transference or countertransference that occurred. In the bill of particulars, Damian states among other things that Levy’s conduct consisted of negligently breaching his fiduciary duty; misusing and distorting the termination process; failing to reveal that termination had not occurred; blurring professional boundaries with the plaintiff; and mishandling, misusing and exploiting transference and countertransference. At no place in the complaint or the bill of particulars does Damian specifically allege improper sexual conduct on the part of Levy.
Prior to commencing her action in June of 1992, Damian, on September 4, 1991, executed a complaint to the National Association of Social Workers (hereinafter NASW) regarding Levy. In the NASW complaint Damian alleges that Levy had an emotionally and physically intimate relationship with her while he was her treating therapist, and that they had a sexual relationship after she changed to another therapist. Damian also alleges that Levy hugged her closely during sessions in 1988; that he discussed her feelings and their relationship during 1988, 1989 and 1990 sessions; that her last session with Levy was on February 8, 1990; that their sexual relationship began on March 24, 1990; that they engaged in sexual activity in his office and at her home; that she tried unsuccessfully to terminate their sexual relationship in May of 1990; and that their relationship ended in September of 1990.
*777 By letter to Levy, dated September 22, 1991, A.I. Management and Professional Liability Claim Adjusters on behalf of American Home Assurance Company acknowledges commencement of the underlying action and that the complaint indicates that the plaintiff is alleging mishandling/manipulation of the transference phenomenon. Levy is then referred to the special provision for allegations of sexual misconduct for which there is a $25,000 limit and to the exclusions for dishonest, criminal, fraudulent or malicious acts or omissions; wrongful act committed with knowledge that it was a wrongful act; and for fines, penalties, punitive, exemplary or multiplied damages. Additionally, Levy is advised as to what awards will not be paid by American Home.
The sexual misconduct provisions provide:
“Sexual Misconduct — The total limit of the Company’s liability hereunder shall not exceed $25,000 in the aggregate for all damages with respect to the total of all claims against any Insured(s) involving any actual or alleged erotic physical contact, or attempt thereat or proposal thereof:
“(a) by any insured or by any other person for whom any insured may be legally liable; and
“(b) with or to any former or current patient or client of any Insured, or with or to any relative of or member of the same household as any said patient or client, or with or to any person with whom said patient or client or relative has an affectionate personal relationship.
“In the event any of the foregoing are alleged at any time, either in a complaint, during discovery, at trial or otherwise, any and all causes of action alleged and arising out of the same or related courses of professional treatment and/or relationships shall be subject to the aforesaid $25,000 aggregate limit of liability and to all other provisions of this clause. The aforesaid $25,000 aggregate limit of liability shall be part of, and not in addition to, the limits of liability otherwise afforded by this policy.
“The Company shall not be obligated to undertake nor continue to defend any suit or proceeding subject to the aforesaid $25,000 aggregate limit of liability after said $25,000 aggregate limit of liability has been exhausted by payments for damages.”
The policy of insurance provides for $1,000,000 of coverage. The insurance company agrees to pay “because of any wrongful conduct committed during the policy period by the insured and *778 arising out of the performance of professional service as a social worker.” The plaintiff does not contest the fact that the alleged conduct arose out of Levy’s actions as a social worker. The plaintiff acknowledges that if this were a claim for damages resulting from malpractice without the assertions of sexual misconduct, that it would be exposed to the full amount of $1,000,000 coverage.
In support of its motion for summary judgment the plaintiff argues that although Damian has not expressly alleged sexual contact or a sexual relationship in her complaint or bill of particulars, by alleging that Levy mishandled and distorted the transference and countertransference phenomena and that Levy blurred or failed to maintain professional boundaries with her, Damian has in fact alleged sexual misconduct and a sexual relationship (citing American Home Assur. Co. v Stone, 61 F3d 1321 [1995]; Cranford Ins. Co. v Allwest Ins. Co., 645 F Supp 1440 [1986]; American Home Assur. Co. v Oraker, Colo Dist Ct, Mar. 5, 1992, 90 CV6483, affd sub nom. American Home Assur. Co. v Bell, Colo Ct App, July 15, 1992, No. 92 CA0669; Jorgenson, Bisbing & Sutherland, Therapist-Patient Sexual Exploitation and Insurance Liability, 27 Tort & Ins LJ 595, 596 [Spring 1992]; Dince, Malpractice Actions Against Therapists By Patients Alleging Sexual Relations, NYLJ, Mar. 9, 1994, at 1, col 1). The plaintiff further argues that Damian’s NASW complaint alleges physical and emotional incidents during the patient-therapist relationship and a sexual relationship after termination of the patient-therapist relationship.
The plaintiff then argues that having asserted sexual misconduct that the sexual misconduct provision applies to all of Damian’s claims not simply those related to sex and that the sexual misconduct provision limiting coverage to $25,000 when there are claims based upon erotic physical contact and claims based upon wrongful conduct independent from the erotic physical contact is unambiguous (citing American Home Assur. Co. v Stone, 864 F Supp 767 [1994], affd 61 F3d 1321 [1995], supra; Irvin v Drown, Ohio CP Ct, July 8, 1996, No. 94 CVA 97-4941; American Home Assur. Co. v Oraker, supra; American Home Assur. Co. v Bylund, 1992 WL 691795 [CD Cal, Feb. 4, 1992, Marshall, J.]). Belatedly, the plaintiff argues that the policy provides on the first page, before the body of the agreement, in hold capital letters: "notice: the limits of liability available to PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. FURTHER NOTE THAT AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE DE *779 DUCTIBLE AMOUNT. NOTE ALSO THAT A SMALLER LIMIT OF LIABILITY APPLIES TO JUDGMENTS OR SETTLEMENTS WHEN THERE ARE ALLEGATIONS OF SEXUAL MISCONDUCT (SEE THE SPECIAL PROVISION ‘SEXUAL misconduct’ in the policy)”, and that the language of the sexual misconduct exclusion is consistent with this caveat, in that the smaller limit of liability applies when there are allegations of sexual misconduct not . to the extent that the allegations refer to sexual misconduct (citing Irvin v Drown, supra).
In further support of its argument for the validity of a coverage limitation for claims of nonsexual conduct when accompanied by claims of sexual conduct, the plaintiff argues that the two inextricably intertwine, and that the sexual relationship simply cannot be viewed separately from other aspects of the therapist’s malpractice or the therapeutic relationship developed between the therapist and the patient (citing American Home Assur. Co. v Stone, 61 F3d 1321, supra; Govar v Chicago Ins. Co., 879 F2d 1581 [1989]; Chicago Ins. Co. v Griffin, 817 F Supp 861 [1993]).
In opposition Damian argues that the motion for summary judgment is premature because the plaintiff has failed to comply with discovery demands and moves to dismiss the complaint for the plaintiffs willful failure to comply with discovery demands. Damian states that the plaintiff has not provided all primary, contribution and excess insurance agreements, all face sheets, endorsements, amendments, and certificates annexed for each policy year, from June 1, 1984 up to and including June 1992; all itemized bills for each insurance agreement for each policy year; all brochures, advertisements and circulars, disseminated by the plaintiff for social worker professional liability policies for the period from June 1984 to June 1992; and the claims handling policy and procedure manual of the plaintiff for each applicable policy year. Additionally, Damian states that depositions of the plaintiff and Levy need to be conducted to explore, among other things, how and when Levy came to know of the existence of the special provision limiting coverage for claims of sexual misconduct; changes made in Levy’s American Home policy over the course of years; how any such changes were brought to his attention; and what his understanding of those changes were.
With respect to the merits, Damian argues that the insurance contract issued to Levy is void as a contract of adhesion; that the contract is oppressive and unconscionable; that the contract is void as against public policy; and that the sexual misconduct provision contains ambiguous language which *780 should be construed against the drafter. In particular as to the contract being void as against public policy, Damian argues that it is against public policy for an insurer to limit coverage for a therapist’s nonsexual misconduct because sexual misconduct is alleged to have occurred in the same or related course of professional treatment, even though such sexual misconduct may be immaterial to the nonsexual claims asserted (citing American Home Assur. Co. v Stephens, 130 F3d 123 [1997]; American Home Assur. Co. v Cohen, 124 Wash 2d 865, 881 P2d 1001 [1994]); that it is against our public policy for an insurer to provide lesser coverage for a therapist’s sexual misconduct than for a therapist’s nonsexual conduct; that the cap for sexual misconduct claims has a disparate impact on female victims of therapist sexual misconduct and, therefore, impermissibly discriminates against women; and it circumvents this State’s recognition that there may be concurrent proximate causes of an injury.
In opposition to Damian’s cross motion and in support of the plaintiff’s motion for summary judgment Levy submits an affidavit wherein he denies that there was any abuse of trust, disregarding of boundaries of an appropriate therapeutic relationship and any malpractice as alleged by Damian. Levy also states that at all times during the insurance application process and thereafter, he was fully aware of all terms and conditions of the policy issued by American Home; that it was not a contract of adhesion as he was fully aware of its terms and conditions concerning coverage of sexually related activities and that his ultimate expectations were in line with the terms of the policy when it came time to rely on it in the underlying case at bar; that Damian’s counsel’s allegation that he was not represented by counsel during the execution of the insurance contract, though correct, is absurd, as one would have to have one hire an attorney every time one would seek an insurance policy which would effectively bring the entire insurance industry down to its knees; that no gun was held to his head when the policy was offered for acceptance; and he was fully aware of what he purchased and the adequacy of same at all times. Finally, Levy states that there was no requirement that he sign in any portion of the policy indicating that he understood same; that to delay this matter further so that he may be deposed is clearly an abuse; and that he hereby states that he reviewed the policy and was well aware of all of its terms and conditions at the time of and after its issuance.
The plaintiff has submitted the affidavit of Curtis Cooper, the assistant vice-president of the Speciality Programs Divi *781 sion of American International Group, the parent company of the plaintiff. Mr. Cooper states that the social worker’s professional liability policy issued to Levy was the same policy American Home sold to thousands of other social workers around the country; that the policy was specifically tailored to the demands and concerns of NASW; that NASW fully endorsed the policy as a whole, and the sexual misconduct provision in particular; that the sexual misconduct provision met with NASW’s expressed desire not to insure for the intentional act of sexual misconduct; that NASW believed that providing full coverage for sexual misconduct would, in effect, be condoning such behavior; that the provision also met with NASW’s desire to offer its members affordable coverage; that NASW was fully aware that if American Home was required to provide coverage for cases where sexual misconduct was involved, then American Home would be required to charge astronomical premiums or not write the coverage at all; that although NASW endorsed the American Home policy, this in no way precluded social workers from purchasing malpractice insurance from other carriers or from purchasing no insurance at all; and that to the best of his knowledge, no other carrier in the late 1980’s (and subsequently) provided limitless malpractice insurance to mental health professionals where sexual misconduct was involved. Mr. Cooper also stated that the drafting of the sexual misconduct provision to cap even nonsexual claims arose out of several rational concerns; that American Home was cognizant of the fact that lawsuits involving sexual misconduct typically involve allegations of purportedly nonsexual negligence; that the catch-all nature of the cap was a mechanism to prevent a plaintiff suing for sexual misconduct, from pleading around the cap by alleging other vague types of misconduct; that from an insurer’s perspective, a therapist’s sexual misconduct cannot be disentangled from other aspects of a therapist’s malpractice; that as very large jury verdicts often result from trials involving the subject of sexual misconduct, it was American Home’s concern that these large verdicts would continue if only claims for sexual misconduct were capped, where sex acts between patient and therapist had occurred; that by limiting its liability for these highly charged claims, American Home was thus able to offer a very affordable policy which truly benefitted those therapists who chose not to have sexual relations with their patients; and that NASW fully agreed with this approach.
The plaintiff also argues that the policy and the sexual misconduct provision were approved by the Superintendent of *782 Insurance; that New York does not require social workers and psychotherapists to purchase malpractice insurance; and that the policy and provision do not violate any New York statute. The defendant Damian does not dispute any of these statements. Additionally, the plaintiff argues that the discovery sought by Damian is not relevant to opposition to the motion for summary judgment; that the contract does not violate the public policy of this State; that the contract is not void as a contract of adhesion; that the contract is not unconsqionable; and that Damian has no standing to raise a defense based upon the terms or bargaining conditions of the contract.
The court will first address Damian’s cross motion to dismiss the complaint for failure to comply with discovery demands and related discovery matters. Initially, the court observes that the plaintiff refutes any attempt by Damian to resolve these discovery issues prior to the making of the motion. Further, the discovery sought, as set forth above, is not relevant to an interpretation of the sexual misconduct provision in the declaratory judgment action. This is particularly so in light of the affidavit of Levy attesting to his knowledge of the terms, conditions and limitations of the policy of insurance and the sexual misconduct provision and the affidavit of Mr. Cooper discussing the purpose and intent of the plaintiff and NASW in offering the subject policy to social workers. Further, inasmuch as this court will find below that the sexual misconduct provision is unambiguous, there is no need to resort to extrinsic evidence of the parties’ intent (see, American Home Assur. Co. v Bylund, 1992 WL 691795 [CD Cal, Feb. 4, 1992, Marshall, J.], supra; see also, Teitelbaum Holdings v Gold, 48 NY2d 51 [1979]; Miccio v National Sur. Corp., 170 AD2d 937 [1991]). Accordingly, the court finds that there is no basis to dismiss the complaint and no impediment to the court’s determining the plaintiffs motion for summary judgment.
The court will next address Damian’s arguments that the insurance contract issued to Levy is void as a contract of adhesion and that the contract is oppressive and unconscionable. Initially, the court notes that Damian, who is not a party to the contract, is without standing to raise a claim of unconscionability or a claim based upon the terms or bargaining conditions of the contract (see, County of Tioga v Solid Waste Indus., 178 AD2d 873 [1991]). Notwithstanding that Damian has no standing to raise these issues, upon the affidavits of Levy and Mr. Cooper, and the facts that NASW endorsed the policy and the sexual misconduct provision (see, American Home Assur. *783 Co. v Oraker, Colo Dist Ct, Mar. 5, 1992, 90 CV6483, supra)-, the Superintendent of Insurance approved the policy and the sexual misconduct provision (see, American Home Assur. Co. v Stone, 61 F3d 1321, supra) and New York does not require social workers and psychotherapists to purchase malpractice insurance (see, American Home Assur. Co. v Stone, 61 F3d 1321, supra; McConaghy v RLI Ins. Co., 882 F Supp 540; American Home Assur. Co. v Smith, 218 Ga App 536, 462 SE2d 441; American Home Assur. Co. v Cohen, 124 Wash 2d 865, 881 P2d 1001, supra; Irvin v Drown, Ohio CP Ct, July 8, 1996, No. 94 CVA 97-4941, supra), the court concludes that there is no basis to find that the subject contract of insurance is a contract of adhesion or unconscionable. Further, the court notes that the fact that a provision happens to benefit a carrier in a particular instance is not a ground for a court to set aside a contract provision as unconscionable (see, Allstate Ins. Co. v Jacobs, 208 AD2d 578 [1994]).
The court will next address the public policy issues raised by Damian. Damian argues that the insurance contract violates the public policy of New York in that it limits coverage for a therapist’s nonsexual misconduct when sexual misconduct is alleged even though sexual misconduct may be immaterial to the nonsexual claims asserted; it provides lesser coverage for a therapist’s sexual misconduct than it provides for the therapist’s nonsexual misconduct; it impermissibly discriminates against women; and it circumvents this State’s recognition that there may be concurrent proximate causes of an injury. At the outset the court observes that for a court to find that a provision in an insurance policy violates the public policy of this State, the provision must violate a statutory mandate or prohibition or any regulation of the Superintendent of Insurance (see, Loring & Assocs. v Continental Cas. Co., 56 NY2d 848 [1982]). Similarly, the court observes that where, as here, the Superintendent of Insurance has approved a policy provision, a policy provision can be said to be consistent with the Insurance Law and relevant public policy (see, Matter of Allstate Ins. Co. v Balsamello, 227 AD2d 616 [1996]; Matter of Allstate Ins. Co. v Cipolla, 226 AD2d 456 [1996]; Allstate Ins. Co. v Jacobs, 208 AD2d 578, supra). With respect to the same sexual misconduct provision, one court has observed that approval of an insurance policy by the Department of Insurance though not conclusive upon a court is entitled to great weight as against a contention that such a provision is against public policy (see, American Home Assur. Co. v Stone, 61 F3d 1321, supra).
*784 Other jurisdictions have addressed the same sexual misconduct provision and public policy arguments. It has been held that the public policy “must be ‘well defined and dominant’ and may not be gleaned from ‘general consideration of supposed public interests’ ” (American Home Assur. Co. v Stone, 61 F3d 1321, 1325, supra; see also, McConaghy v RLI Ins. Co., 882 F Supp 540 [1995], supra; American Home Assur. Co. v Smith, 218 Ga App 536, 462 SE2d 441 [1995], supra). It has been found to be significant in determining a public policy argument that a State does not require social workers or psychotherapists to obtain malpractice or professional liability insurance at all, much less insurance for claims of sexual misconduct, notwithstanding that a State may have expressed an interest in protecting the public from sexual misconduct by psychotherapists or professional counselors (see, American Home Assur. Co. v Stone, 61 F3d 1321, supra; McConaghy v RLI Ins. Co., 882 F Supp 540, supra; American Home Assur. Co. v Smith, 218 Ga App 536, 462 SE2d 441, supra; American Home Assur. Co. v Cohen, 124 Wash 2d 865, 881 P2d 1001, supra; Irvin v Drown, supra). This is precisely the situation in the State of New York. One court faced with the situation of a State which did not require psychologists to maintain malpractice liability insurance ruled that it cannot be contrary to the public interest to allow insurers to limit their coverage for the specific risk of sexual misconduct by its insured (see, American Home Assur. Co. v Smith, 218 Ga App 536, 462 SE2d 441, supra). Another court faced with the same situation stated that when a psychotherapist chooses to obtain liability insurance, although not required to do so, thus allowing the victim to have an even greater chance of obtaining some compensation, it refused to hold that a cap on the insurer’s liability would disserve the public interest (see, American Home Assur. Co. v Stone, 61 F3d 1321, supra). This same court observed that even if a State has an interest in protecting the public from, and possibly compensating the victims of, sexual exploitation, it does not necessarily follow that such a public policy would preclude insurers from limiting their coverage for liability arising out of the insured’s sexual misconduct.
With respect to Damian’s claim that the sexual misconduct provision violates public policy because of the potential chilling effect it might have on patients reporting the sexual misconduct of their therapists, the court makes the following observations. The argument that the contract provision would have a discouraging effect on reporting sexual misconduct when *785 a patient has been subjected to both sexual and nonsexual misconduct for fear of having all claims subject to the $25,000 cap has been said to rest on a number of faulty premises. First, there is a mistaken presumption that patients are aware of their therapists’ insurance policy prior to litigation and sue based on the amount of coverage (see, American Home Assur. Co. v Stone, 61 F3d 1321, supra; American Home Assur. Co. v Smith, 218 Ga App 536, 462 SE2d 441, supra; American Home Assur. Co. v Oraker, supra; Irvin v Drown, supra). Second, patients tend not to refrain from complaining, whether by administrative complaint or litigation, about the therapists’ sexual misconduct (see, e.g., American Home Assur. Co. v Smith, 218 Ga App 536, 462 SE2d 441, supra; American Home Assur. Co. v Oraker, supra; Irvin v Drown, supra). Third, it assumes that victims would always be able to conceal the cause of the injury, the therapists’ sexual exploitation, and litigate the malpractice suit without making any allegations of sexual misconduct (see, American Home Assur. Co. v Stone, 61 F3d 1321, supra). Fourth, the sexual misconduct provision will discourage sexual misconduct by therapists who would be exposed to, and uninsured for, personal liability (see, Irvin v Drown, supra; see also, American Home Assur. Co. v Stone, 864 F Supp 767 [1994], affd 61 F3d 1321 [1995]). For all of these reasons the court finds that Damian’s reliance on American Home Assur. Co. v Stephens (130 F3d 123, supra) and American Home Assur. Co. v Cohen (124 Wash 2d 865, 881 P2d 1001, supra) for the proposition that the sexual misconduct provision violates public policy because of such chilling effect is unpersuasive. In particular, the court notes that the Fifth Circuit in American Home Assur. Co. v Stephens (140 F3d 617 [1998]) withdrew its previous opinion.
Additionally, the court observes that the courts in Stephens (supra) (prior to withdrawing the opinion) and Cohen (supra) applied a much less stringent standard for finding a violation of public policy as compared to New York courts. In Stephens (130 F3d, at 126) the court found that an insurance contract is against the public policy of Texas if it is merely “inconsistent with or contrary to the best interests of the public”. In Cohen (124 Wash 2d, at 881, 881 P2d, at 1010) the court found that the sexual misconduct provision violated the public policy of Washington by “impeding] an important legislative goal”. As discussed above, for an insurance policy to violate New York’s public policy it must violate a statutory provision, and not merely be inconsistent with or impede such provision.
*786 With respect to Damian’s argument that the sexual misconduct provision creates an inequality in coverage in that a patient who has been injured by both sexual and nonsexual misconduct may only recover up to $25,000, while a patient injured only by nonsexual misconduct may recover up to $1,000,000, the court makes the following observations. First, as discussed above, inasmuch as New York does not require therapists to maintain malpractice insurance, it cannot be contrary to public policy for a carrier to offer varying amounts of coverage depending on the nature of the claim asserted against the insured (see, American Home Assur. Co. v Stone, 61 F3d 1321, supra; American Home Assur. Co. v Smith, 218 Ga App 536, 462 SE2d 441, supra; McConaghy v RLI Ins. Co., 882 F Supp 540, supra). Second,. an insurance contract merely sets the amount of insurance coverage, it does not limit the amount a patient may recover. A victim awarded damages in an amount over a coverage limit is not precluded from attempting to recover any deficiency from the therapist personally. The court acknowledges that, in the case at bar, Levy has filed a petition in bankruptcy and Damian has agreed to accept the policy limits as her recovery. The courts will not expand a mutually binding private insurance contract on public policy grounds simply because the expansion might be more desirable or advantageous to a third-party beneficiary of the insurance contract, for to do so would be to rewrite a private agreement between an insurer and an insured (see, American Home Assur. Co. v Stone, 61 F3d 1321, supra; American Home Assur. Co. v Oraker, Colo Dist Ct, Mar. 5, 1992, 90 CV6483, supra). This remains true where, as here, upon application of the sexual misconduct sublimit the health care provider is judgment proof (see, McConaghy v RLI Ins. Co., 882 F Supp 540, supra).
Third, the drafting of the sexual misconduct provision to limit coverage for all acts of malpractice once sexual misconduct is alleged has a rational basis because it is not unreasonable to anticipate that lawsuits involving sexual misconduct will typically involve allegations of other types of nonsexual negligence (see, McConaghy v RLI Ins. Co., 882 F Supp 540, supra). It has been said that not only does sexual misconduct generally not occur in the absence of other negligence, but that the sexual relationship simply cannot be viewed separately from other aspects of the therapist’s malpractice or the therapeutic relationship developed between the therapist and the patient (see, American Home Assur. Co. v Stone, 61 F3d 1321, supra; Govar *787 v Chicago Ins. Co., 879 F2d 1581, supra; Chicago Ins. Co. v Griffin, 817 F Supp 861, supra). The insured counselor who agrees to such a provision and pays a low premium for this type of limited coverage recognizes that such individual may be personally liable for part of a significant judgment in cases where sexual misconduct is alleged (see, McConaghy v RLI Ins. Co., 882 F Supp 540, supra). An insurer’s decision to limit a risk is not in and of itself violative of public policy (see, American Home Assur. Co. v Oraker, supra). The sexual misconduct provision can be considered a legitimate effort by American Home to offer a reasonably priced insurance policy and at the same time limit its exposure to a substantial hazard of risk of loss, which is possible in light of the potentially large jury verdicts that often result from suits involving the emotionally charged subject of sexual exploitation from a psychotherapist (see, American Home Assur. Co. v Stone, 61 F3d 1321, supra). It has been said that for the vast majority of mental health professionals who never engage in sexual exploitation of their patients, this kind of insurance policy fills an important gap in the marketplace; and that the voiding of the sexual misconduct provision could produce the unintended result of requiring the well-behaving majority to subsidize the misconduct of a few, and increasing health care cost (see, American Home Assur. Co. v Stone, 63 F3d 1321, supra). It has also been said that rather than exclude the risk, American Home limited the liability for sexual misconduct claims, an alternative to dropping the line of coverage generally (see, American Home Assur. Co. v Oraker, supra).
Damian’s argument that the sexual misconduct provision discriminates against women because most of the victims of sexual abuse by therapists are women is without merit. Damian states that the laws of New York forbid discrimination against women in the context of insurance coverage, citing to Insurance Law § 2607 which provides that “[n]o individual or entity shall refuse to issue any policy of insurance, or cancel or decline to renew such policy because of the sex or marital status of the applicant or policyholder”. The focus of this provision is the gender of the insured, not the gender of the ultimate third-party beneficiary of the insurance policy. Two courts which have been presented with the gender argument in terms of the very same sexual misconduct provision as in the case at bar have found no violation of a State’s public policy against gender discrimination (see, American Home Assur. Co. v Stone, 61 F3d 1321, supra; American Home Assur. Co. v Cohen, 124 Wash 2d 865, 881 P2d 1001, supra).
*788 Damian’s argument that the sexual misconduct provision circumvents New York’s recognition that there may be concurrent proximate causes of an injury is without merit. It has been held that the concurrent proximate cause theory has no role because the sexual misconduct provision does not purport to reduce liability solely for damages caused by the insured’s sexual misconduct; but rather by the unambiguous terms of the provision the $25,000 limit is triggered whenever the malpractice suit against the insured involves any actual or alleged erotic physical contact, with the limit applying to any and all causes of action arising out of the same professional relationship (see, American Home Assur. Co. v Stone, 61 F3d 1321, supra).
For all the reasons set forth above, the court concludes that the sexual misconduct provision does not violate the public policy of New York.
The court will next address the issue of the ambiguity of the sexual misconduct provision. For the court to find that the provision is ambiguous the court must find that the language is subject to more than one reasonable interpretation (see, American Home Assur. Co. v Stone, 864 F Supp 767, supra). Examining the sexual misconduct provision as a whole the court finds that the language is plain and unambiguous and subject to only one interpretation. When there is a claim involving actual or alleged erotic physical contact or attempt thereat or proposal thereof, the $25,000 sublimit applies to any and all causes of action alleged and arising out of the professional relationship and treatment (see, American Home Assur. Co. v Stone, 864 F Supp 767, supra; American Home Assur. Co. v Oraker, supra; Irvin v Drown, Ohio CP Ct, July 8, 1996, No. 94 CVA 97-4941, supra). It has been said that American Home has written a policy that subjects all counseling malpractice claims to a $25,000 sublimit if sexual misconduct is involved or has tainted the counseling relationship in any way (see, American Home Assur. Co. v Stone, 864 F Supp 767, supra). It is evident that the American Home policy restricted its coverage in clear and specific language (see, Irvin v Drown, supra; American Home Assur. Co. v Bylund, 1992 WL 691795 [CD Cal, Feb. 4, 1992, Marshall, J.], supra). As noted above, the language in the exclusion is consistent with the caveat in bold capital letters at the top of the first page of the policy “that a smaller LIMIT OF LIABILITY APPLIES * * * WHEN THERE ARE ALLEGATIONS OF sexual misconduct” (see, special provision “Sexual Misconduct in the policy”; see, Irvin v Drown, supra; see also, American *789 Home Assur. Co. v Oraker, supra). It was observed by one court that this notice does “not” state that the smaller liability limit applies “to the extent” that the allegations refer to sexual misconduct (Irvin v Drown, supra). As another court observed, if an insurance contract is clear and unambiguous, the court must enforce it as written; and the court cannot rewrite the contract for the parties and certainly cannot increase the risk that the insurer bargained for in exchange for the previously set premium (American Home Assur. Co. v Oraker, supra).
Because the term “erotic physical contact” is not defined in the contract of insurance it must be given its normal or plain meaning. One court which analyzed the term observed the following: “Obviously, something more than ordinary physical contact was intended or the word ‘erotic’ would not have been used. Erotic is defined as ‘pertaining to or treating sexual love, pursuing or satisfying sexual desires subject to or marked by strong sexual desire’. Random House Dictionary. The Court concludes the conduct contemplated by the policy, ‘erotic physical contact’, is clearly of an order of magnitude above a simple hug or a sharing of tenderness that a therapist might give a patient in a particular moment of stress or emotion. Otherwise, any physicality in therapy could result in the limitation being applied. Thus, the type of contact envisioned by the phrase ‘erotic physical contact’, is more in the nature of the sexual contact or an intimate relationship involving physical gratification * * * such as fondling breasts and genitalia * * * a hugging with erections.” (American Home Assur. Co. v Oraker, supra.) Another court stated that “[e]rotic conduct is not only conduct prompted by love and desire but conduct ‘tending to arouse sexual love or desire’ ” (Irvin v Drown, supra, citing Merriam-Webster’s Collegiate Dictionary 394 [10th ed 1993]). Further, it has been held that the fact that the term “erotic physical contact” is not further defined in the policy does not render the provision ambiguous (see, American Home Assur. Co. v Stone, 864 F Supp 767, citing Pohrer v Title Ins. Co., 652 F Supp 348 [1987]); and that the phrase can be reasonably and unambiguously construed to mean “ ‘sexual contact’ ” (American Home Assur. Co. v Stone, 864 F Supp 767, 773, supra).
For all of the reasons set forth above the court concludes that the sexual misconduct provision is unambiguous, and that the $25,000 sublimit will apply if there are claims constituting erotic physical contact, whether such claims stand alone or are accompanied by claims which do not constitute erotic physical contact. Having determined that the insurance contract issued *790 to Levy is not a contract of adhesion, is not unconscionable, does not violate public policy and is unambiguous, the court will now address the relief requested by the plaintiff.
As this court noted previously, Damian’s complaint and bill of particulars in the underlying action allege among other things abusing, manipulating or distorting transference and countertransference; negligently acting in a dual role and negligently continuing an improper relationship with the plaintiff; and a blurring of professional boundaries; but do not specifically allege improper sexual conduct. Although the cases and professional literature suggest that these are “buzz” words for sexual conduct and a sexual relationship (see, American Home Assur. Co. v Stone, 61 F3d 1321, supra; Cranford Ins. Co. v Allwest Ins. Co., 645 F Supp 1440, supra; American Home Assur. Co. v Oraker, supra; Jorgenson, Bisbing & Sutherland, Therapist-Patient Sexual Exploitation and Insurance Liability, 27 Tort & Ins LJ 595, 596 [Spring 1992]; Dince, Malpractice Actions Against Therapists By Patients Alleging Sexual Relations, NYLJ, Mar. 9, 1994, at 1, col 1) this court is not willing to make such a finding at this juncture. This is particularly so in light of the discussion above of the phrase “erotic physical contact” wherein it has been observed that “erotic physical contact, is clearly of an order of magnitude above a simple hug or a sharing of tenderness that a therapist might give a patient in a particular moment of stress or emotion”, and is “more in the nature of the sexual contact of an intimate relationship involving physical gratification” (see, American Home Assur. Co. v Oraker, supra). Additionally, the court notes that in her NASW complaint, although Damian may have alleged physical and emotional incidents during the patient-therapist relationship, she does not allege a sexual relationship until after the patient-therapist relationship terminated. In this regard, the court observes that a physical incident need not constitute erotic physical contact as discussed above.
Accordingly, although this court has found that the sexual misconduct provision is unambiguous and enforceable and that the sublimit applies when both erotic physical contact and non-erotic physical contact claims are made, the plaintiff is not entitled to a declaration at this time that its responsibility in the Damian malpractice action is limited to $25,000, and a denial of its motion for summary judgment is warranted. Pursuant to the sexual misconduct provision, if at any time during further pleadings, pretrial discovery, trial or otherwise, Damian alleges conduct on the part of Levy which constitutes erotic *791 physical contact, then the exposure to the plaintiff will be limited to the $25,000 sublimit. If Damian can prepare for and prosecute her malpractice action without alleging conduct which constitutes erotic physical contact within the judicial proceeding then the $25,000 sublimit will not apply. The court notes that just as Damian cannot dictate the terms of the insurance contract as between the plaintiff and Levy, the plaintiff cannot dictate to Damian the course she will take in prosecuting her malpractice action against the plaintiffs insured.
If Damian is able to complete pretrial discovery and further pleadings within the judicial proceeding without asserting conduct which constitutes erotic physical contact and the malpractice action reaches trial, then the trial court can hear and determine any issues which may arise from this point forward relating to the declaratory judgment action at trial, while the jury hears and determines the malpractice action based upon the evidence adduced during the malpractice action. Additionally, the interrogatories presented to the jury so that it may issue a special verdict in the malpractice action may be fashioned in accord with the language of the sexual misconduct provision so as to permit the court’s resolution of the declaratory judgment action.
In order to fully set forth the issues of the plaintiffs exposure the court notes the exclusions (a), (p) and (q) which provide:
“This policy does not apply:
“(a) to any dishonest, criminal, fraudulent or malicious act or omission * * *
“(p) to any wrongful act committed with the knowledge that it was a wrongful act * * *
“(q) to fines or penalties or punitive, exemplary or multiplied damages; however, where permitted by law, this policy shall cover, subject to all terms, conditions and exclusions contained herein, up to $25,000 punitive, exemplary or multiplied damages as part of and not in addition to the limits of the Company’s liability otherwise afforded by this policy, (including, but not limited to, the $25,000 aggregate sublimit of liability set forth in Special Provisions 1., Sexual Misconduct).”
In light of this provision, both Damian and Levy are reminded that should Levy receive an award in her malpractice action which is based upon dishonest, fraudulent or malicious acts, *792 an award based on a knowingly wrongful act, or an award of punitive damages, the plaintiff will not be responsible for the payment of such award.