[No. 52079-8. En Banc. June 5, 1986.]

JAMES A. HARMAN, *Appellant,* v. THE PIERCE COUNTY BUILDING DEPARTMENT, ET AL, *Respondents.*

*Michael F. Pozzi,* for appellant.

*William H. Griffies, Prosecuting Attorney,* and *Newell Smith, Special Deputy,* for respondent Pierce County.

*Kenneth O. Eikenberry, Attorney General,* and *John M. Gray* and *Paul D. Doumit, Assistants,* for respondent State.

UTTER, J.—James A. Harman appeals a summary judgment verdict denying his claims against the Department of Labor and Industries and the Pierce County Building Department for damages he suffered when he could not recover on a contractor's statutorily required insurance policy. *See* RCW 18.27.050. Harman claims that the State negligently approved the contractor's inadequate insurance policy and that the County negligently issued a building permit to a contractor whose license had lapsed. As a result of these actions, Harman claims he was denied access to a fund which could have compensated him for the damages resulting from the contractor's incompetence and financial irresponsibility. Because we find that the contractor's policy meets the requirements of RCW 18.27.050, we affirm the trial court.

Stephen Barry failed to renew his contractor's registration after it expired on August 26, 1981. Although his registration had lapsed, his insurance policy continued in effect until August 15, 1982, and his bond continued in

effect until December 3, 1981. On September 14, 1981, he agreed to remodel appellant Harman's garage for $6,928. Later, on September 23, 1981, he applied for a building permit with the Pierce County Building Department. There is a factual dispute concerning why Barry was able to successfully misrepresent his status as a contractor. Appellant maintains it was through Pierce County negligence, while Pierce County maintains it was through the contractor's cleverness.

On December 31, 1981, appellant's garage roof collapsed due to the contractor's negligence causing damages alleged to be greater than $14,000. The contractor's $4,000 bond, required under RCW 18.27.040, was not available for appellant's claims as it had already been attached by others in September and October 1981. The bond was subsequently canceled on December 3, 1981. The contractor's $20,000 insurance policy, required under RCW 18.27.050, excluded coverage for property damaged while under "the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control." Clerk's Papers, at 28. The parties agree that the exclusion applies to appellant's property damage resulting from the contractor's negligence.

Because of the exclusion, appellant claims that the insurance policy fails to meet the requirements of RCW 18.27.050, that the contractor could not have been in compliance with the statute, and that the State was therefore per se negligent in originally licensing him instead of apprising him of these alleged insurance deficiencies. Pierce County is also claimed to be negligent in issuing a building permit when the contractor was not licensed and had not substantially complied with the licensing requirements.

On cross summary judgment motions, the trial court ruled in favor of respondents on all matters.

The essential elements of a negligence action include the following: "'(1) the existence of a duty owed to the complaining party, (2) a breach thereof, and (3) a resulting injury.' For legal responsibility to attach to the negligent

conduct, the claim of breach of duty must be a proximate cause of the resulting injury." (Citations omitted.) *Petersen v. State,* 100 Wn.2d 421, 435, 671 P.2d 230 (1983). Proximate cause requires proof of cause in fact as well as a legal determination that liability should attach. *Petersen,* at 435.

Appellant raises several issues concerning the State's and County's legal duties and their respective breaches of those duties. We do not reach these issues, however, because, in finding that the contractor's insurance policy was adequate, we hold that the conduct of the State and the County cannot be the proximate cause of appellant's damages. The only issue is whether a contractor's liability policy meets the requirements of RCW 18.27.050 where that policy excludes coverage for the contractor's damage to property under his care, custody, or control.

As appellant concedes, his case "stands or falls largely on the interpretation of RCW 18.27.050 and its application to the rest of the Chapter." Brief of Appellant, at 6–7. The statute states:

> At the time of registration the applicant shall furnish to the director satisfactory evidence that the applicant has procured and has in effect *public liability and property damage insurance covering the applicant's contracting operations* in the sum of not less than twenty thousand dollars for injury or damage to property and fifty thousand dollars for injury or damage including death to any one person and one hundred thousand dollars for injury or damage including death to more than one person.
>
> In the event that such insurance shall cease to be effective the registration of the contractor shall be suspended until such insurance shall be reinstated.

(Italics ours.) RCW 18.27.050.

Appellant contends the trial court erred in concluding that the "public liability and property damage insurance" requirement was intended to cover only consequential damages, and that his remedy for negligent and defective work was to sue on the bond required by RCW 18.27.040. Appellant contends that the Legislature would have

expressly limited the insurance requirement to indirect and consequential damages had it intended that result. Focusing on the language, "covering the applicant's contracting operations", appellant concludes that the statute was intended to require insurance coverage for all property damage caused by the contractor. This is because the language is "clear and unambiguous and not subject to judicial interpretation." Brief of Appellant, at 9.

Appellant bolsters his argument by claiming his proposed interpretation of RCW 18.27.050 best meets the express purpose of RCW 18.27. RCW 18.27.140 states that purpose:

> It is the purpose of this chapter to afford protection to the public including all persons, firms, and corporations furnishing labor, materials, or equipment to a contractor from unreliable, fraudulent, financially irresponsible, or incompetent contractors.

The State claims, however, that appellant's proper remedy is to sue on the now impaired bond, not to claim the insurance. It urges that the term "public" limits "liability and property damage" coverage required by RCW 18.27.050 to noncontracting members of the "organized community." *See* Comment, *Statutory Denial of Judicial Relief to Unregistered Contractors—Washington's Regulation of Builders Creates Property Owners' Windfall*, 14 Gonz. L. Rev. 647 (1979). We agree.

More compelling, however, than these bits of linguistic analysis is the State's observation that the bond (section .040) and insurance (section .050) provisions were enacted at the same time. "Statutes in pari materia should be harmonized so as to give force and effect to each and this rule applies with peculiar force to statutes passed at the same session of the Legislature." *International Comm'l Collectors, Inc. v. Carver*, 99 Wn.2d 302, 307, 661 P.2d 976 (1983). In *Commercial Collectors*, this court interpreted sections of RCW 18.27 to determine the beneficiaries of a contractor's security bond. The defendants argued unsuccessfully that section .140 (the purpose statute), enacted in 1973, impliedly repealed portions of a related provision,

section .040 (the bond statute, partially at issue here), to foreclose materialmen's claims to the bond. Although the two provisions had been acted on under separate bills, this court found that its obligation to harmonize statutes in pari materia was even greater when the two statutes had been enacted in the same legislative session. 99 Wn.2d at 307.

In the present case, appellant does not ask the court to find that one of the provisions impliedly repeals the other. He does, however, ask the court to believe the Legislature enacted duplicative legislation *within the same bill,* House Bill 89 (1963); that is, that the Legislature intended to provide contractors' customers with remedies under two separate provisions, without expressly saying it was doing so.

A more plausible statutory scheme views section .040 as designed to protect both those who contract with the contractor and the State's revenue interest. Section .050 is designed to protect those not in privity with the contractor who might be harmed by his operations. One author, discussing the chapter, simply assumes that this structure was intended by the Legislature: "A person with a claim against a registered contractor may bring suit upon the bond [citing .040]; the public is protected by the required insurance against damage to person and property [citing .050]." Comment, 14 Gonz. L. Rev. at 648.

Although there are no cases identifying the class of persons protected by section .050, one Justice has assumed that section .050 was enacted for "innocent third parties." In arguing that the majority's reasoning in a "substantial compliance" case allowed the immediately contracting parties to render section .050 ineffective, Justice Stafford expressed the fear that "innocent third parties [would be] forced to suffer the loss if injured by negligent activities of an insolvent contractor." *Murphy v. Campbell Inv. Co.,* 79 Wn.2d 417, 429, 486 P.2d 1080 (1971) (Stafford, J., dissenting). On the other hand, the express language of section .040 and numerous cases, *see, e.g., Commercial Collectors,* at 308, establish that the bond protects *only* the following claims: (1) labor, (2) breach by a party to a construction

contract, (3) materialmen, (4) taxes, and (5) if entitled, plaintiff's court costs, interest, and fees.

While the legislative history surrounding the 1963 enactment of the statute does not shed light on the problem before us, there is some helpful subsequent history. Section .050 has never been amended. Section .040 has, however, been amended several times to increase the size of the bond and thereby protect consumers. See various judiciary committee reports for Engrossed House Bill 194, 42d Legislature (1972); Engrossed Senate Bill 2184, 45th Legislature (1977). In the Senate Report for Senate Bill 2184, 45th Legislature (1977), the committee stated that "[a] bond is required so that a person may bring suit on the bond for the contractor's negligence, improper work, or breach of contract." No report even considers the possibility that section .050 also provides a remedy to the consumer. Moreover, the letters from contractor groups lobbying to stop or reduce the increases do not mention section .050 as providing consumers with a remedy. Other evidence shows that the consumer's remedy for "poor work" or breach is generally thought to be restricted to the bond statute. *See* D. Seago, *Home Improvement Gyps Make Killing,* Tacoma News Tribune, March 24, 1973.

The structure of the act, subsequent legislative history of section .040, and what little judicial and scholarly attention has been devoted to sections .040 and .050 indicate that the Legislature is responsible for appellant's not having access to the insurance. The respondents cannot be found to have proximately caused appellant's injuries.

Affirmed.

DOLLIVER, C.J., DORE, PEARSON, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., and CUNNINGHAM, J. Pro Tem., concur.