## NOTICE:   SLIP OPINION
### (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
AUGUST 11, 2022

_González, C.J._
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
AUGUST 11, 2022

ERIN L. LENNON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CERTIFICATION FROM UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON IN | ) ) ) ) | |
| | ) | No. 100466-4 |
| PREFERRED CONTRACTORS INSURANCE COMPANY, RISK RETENTION GROUP, LLC, | ) ) ) | |
| | ) | En Banc |
| Petitioner-Plaintiff, | ) | Filed: August 11, 2022 |
| | ) | |
| v. | ) | |
| | ) | |
| BAKER AND SON CONSTRUCTION INC., a Washington for-profit corporation; ANGELA COX, as Personal Representative of the ESTATE OF RONNIE E. COX, deceased; ANGELA COX, individually and as mother of G.C., a minor, | ) ) ) ) ) ) | |
| | ) | |
| Respondents-Defendants. | ) ) | |

OWENS, J. — This case asks, via certified question, whether a contractor's

commercial general liability (CGL) insurance policy that requires the loss to occur

and be reported within the same policy year and provides neither prospective nor

retroactive coverage violates Washington's public policy. In light of chapter 18.27

*Preferred Contractors Ins. Co. v. Baker & Son Construction, Inc.*
No. 100466-4

RCW, which regulates the registration of contractors, and specifically RCW 18.27.050, which requires registered contractors to carry at least $100,000 in financial responsibility for bodily injuries, we answer the certified question in the affirmative.

FACTS AND PROCEDURAL HISTORY

Cox Construction was the general contractor of a project to remodel the Roadway Motel in Long Beach, Washington. Certified Doc. (Doc.) 1, at 9. Cox hired Baker and Son Construction Inc. as a subcontractor. On October 31, 2019, a Baker employee allegedly caused a two-by-four to fall from a railing and strike Ronnie Cox, the owner of Cox Construction, in the head. Mr. Cox died in his sleep later that night. Baker allegedly called an insurance agent[1] to alert them of the incident. The agent told Baker that no action needed to be taken because at that time no claim existed.

On September 23, 2020, Baker received a notice from an attorney representing Mr. Cox's widow, Angela Cox, that she was pursuing a wrongful death claim against Baker. Baker notified its insurer, Preferred Contractors Insurance Company (PCIC), of the claim on September 25, 2020. PCIC denied coverage of the claim on October 14, 2020, but agreed to defend Baker under a reservation of rights. PCIC denied coverage for several reasons, but the reason relevant to the certified question before us

---

[1] The parties contest whether this person was an agent of Preferred Contractors Insurance Company (PCIC). However, as the insurance policies in this case require notification of claims in writing, whether or not this agent represented PCIC is irrelevant. The phone call would not have satisfied the notice requirement.

2

*Preferred Contractors Ins. Co. v. Baker & Son Construction, Inc.*
No. 100466-4

involves the claims-made nature of the policy and the timing of Baker's tender of

Ms. Cox's claim.

There are two common types of CGL policies: occurrence policies and claims-

made policies. *Am. Cont'l Ins. Co. v. Steen*, 151 Wn.2d 512, 517, 91 P.3d 864 (2004)

(plurality opinion). Generally, liability attaches in occurrence policies when an

insured event happens during the policy period. *Safeco Title Ins. Co. v. Gannon*, 54

Wn. App. 330, 337-38, 774 P.2d 30 (1989) (quoting *Gulf Ins. Co. v. Dolan, Fertig &*

*Curtis*, 433 So. 2d 512, 515-16 (Fla. 1983)). On the other hand, liability usually

attaches in a claims-made policy when the claim is reported to the insurer within the

policy period. *Id.*

PCIC had issued two CGL policies to Baker. The policies were substantively

identical, but one had a coverage period of January 5, 2019 to January 5, 2020 (the

2019 policy), and the other had a coverage period of January 5, 2020 to January 5,

2021 (the 2020 policy). Doc. 24, at 41 (Ex. E), 104 (Ex. F). These were claims-made

policies. However, the insuring agreement provided coverage with language more

similar to an occurrence policy:

> b. This insurance applies to "bodily injury" and "property
> damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by
> an "occurrence" that first takes place or begins during
> the "policy period". An "occurrence" is deemed to first
> take place or begin on the date that the conduct, act or
> omission, process, condition(s) or circumstance(s)

3

alleged to be the cause of the "bodily injury" or "property damage" first began, first existed, was first committed, or was first set in motion, even though the "occurrence" causing such "bodily injury" or "property damage" may be continuous or repeated exposure to substantially the same general harm;

(2) The "bodily injury" or "property damage" resulting from the "occurrence" first takes place, begins, appears and is first identified during the "policy period". All "bodily injury" or "property damage" shall be deemed to first take place or begin on the date when the "bodily injury" or "property damage" is or is alleged to first become known to any person, in whole or in part, even though the location(s), nature and/or extent of such damage or injury may change and even though the damage or injury may be continuous, progressive, latent, cumulative, changing or evolving.

*Id.* at 46-47, 109-110.

The claims-made features of the policies were added in a "claims-made and reported limitation" endorsement, limiting coverage to bodily injuries that occurred and were reported to PCIC within the policy period. *Id*. at 86, 149. Specifically, the endorsement added another section to the insuring agreement:

d. . . . [T]his policy shall apply only to claims first made against the insured and reported to us in writing during the policy period. Coverage under this policy will only apply to claims made against the insured and reported to us on or after the policy inception date and prior to the policy expiration date as shown on the Declarations page(s), subject to the extended reporting period provided below. If prior to the effective date of this policy, any insured had a reasonable basis to believe a claim may arise, then this policy shall not apply to such claim or any related claim.

*Preferred Contractors Ins. Co. v. Baker & Son Construction, Inc.*
No. 100466-4

> As a condition precedent to any coverage (defense or indemnity) under this Policy, You must give written notice to the Company of any claim as soon as practicable, but in all events no later than:
>
> > (a) the end of the Policy Period; or
> > (b) 60 days after the end of the Policy Period so long as such "Claim" is made within the last 60 days of such Policy Period.

*Id.* at 86, 149.

These endorsements also provided there was no continuous coverage between policies that were renewed, limiting each policy period to one year. Because Mr. Cox's death occurred in October 2019 and Ms. Cox did not notify Baker of her intent to sue until September 2020, the occurrence and reporting dates did not occur in the same policy period. The 2019 policy did not cover the claim because it was not reported within the policy period, and the 2020 policy did not provide coverage because the occurrence the claim arose from happened before the policy period began on January 5, 2020.

Ms. Cox filed her wrongful death claim in Pacific County Superior Court on November 12, 2020. PCIC filed a declaratory action in the United States District Court for the Western District of Washington on January 7, 2021, seeking a declaration that it had no duty to defend or indemnify Baker for Mr. Cox's death. PCIC filed a motion for summary judgment and Ms. Cox, joined by Baker, filed a

*Preferred Contractors Ins. Co. v. Baker & Son Construction, Inc.*
No. 100466-4

motion for certification to this court. The district court denied PCIC's motion and partially granted Ms. Cox and Baker's motion. The certified question in full asks:

> Whether a liability insurance policy providing only coverage for "occurrences" and resulting "claims made and reported" that take place within the same one-year policy period, and providing no prospective or retroactive coverage, violates Washington public policy and renders either the "occurrence" or "claims-made and reported" requirement unenforceable.

Doc. 57, at 12.

In addition to the briefs filed by Cox, Baker, and PCIC, United Policyholders filed an amicus curiae brief in support of Cox and Baker.

CERTIFIED QUESTION PRESENTED

This court has the inherent authority to reformulate a certified question. *Travelers Cas. & Sur. Co. v. Wash. Tr. Bank*, 186 Wn.2d 921, 931, 383 P.3d 512 (2016). To clarify the narrow circumstances when a contractor's liability insurance policy may violate our public policy, we reformulate the certified question as follows:

> When a contractor's liability insurance policy provides only coverage for "occurrences" and resulting "claims-made and reported" that take place within the same one-year policy period, and provide no prospective or retroactive coverage, do these requirements together violate Washington public policy and render either the "occurrence" or "claims-made and reported" provisions unenforceable?

*Preferred Contractors Ins. Co. v. Baker & Son Construction, Inc.*
No. 100466-4

ANALYSIS

A. *Standard of Review*

The United States District Court certified the above question to us pursuant to RCW 2.60.020. Certified questions are questions of law we review de novo. *Brady v. Autozone Stores, Inc.*, 188 Wn.2d 576, 580, 397 P.3d 120 (2017). In Washington, insurance policies "are to be construed as contracts, and interpretation is a matter of law." *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 480, 687 P.2d 1139 (1984).

B. *Background on Occurrence and Claims-Made Insurance Policies*

The two main types of liability insurance policies on the market are occurrence and claims-made policies. *Steen*, 151 Wn.2d at 517. Occurrence policies generally provide coverage for damages that occur during the policy period, regardless of when the loss is discovered, as long as it is reported within a reasonable time. *Id.* (citing *Gannon*, 54 Wn. App. at 337-38). Claims-made policies, which have become more common since the 1980s, generally provide coverage for losses reported within the policy period regardless of when the loss occurred. *Id.* "Unlike occurrence policies, where the insurer contracts to cover risk that is by its very nature open-ended, claims-made policies attempt to define the risk so that it is ascertainable at the end of the policy period." *Gannon*, 54 Wn. App. at 337.

However, it would be an oversimplification to say all claims-made or all occurrence policies are the same. *See* Bob Works, *Excusing Nonoccurrence of*

7

*Preferred Contractors Ins. Co. v. Baker & Son Construction, Inc.*
No. 100466-4

*Insurance Policy Conditions in Order to Avoid Disproportionate Forfeiture: Claims-Made Formats as a Test Case*, 5 CONN. INS. L.J. 505, 518-19 (1999). Most claims-made policies are effective from a set "retroactive date." Carolyn M. Frame, "*Claims-Made" Liability Insurance: Closing the Gaps with Retroactive Coverage*, 60 TEMP. L.Q. 165, 173 (1987). The retroactive date can be set for before the policy period to prevent a gap in coverage when the insured switches between insurers or from an occurrence policy to a claims-made policy. *Id*. However, it is more common to set the retroactive date as the first day of the claims-made policy period and retain that retroactive date across policy renewals to prevent gaps in coverage. *Id*. at 183-84.

Claims-made policies that reset the retroactive date to the start of each new policy period are called nonretroactive claims-made policies. *See* Br. of Amicus Curiae United Policyholders at 4; Frame, *supra* at 184. In a nonretroactive claims-made policy, "no one policy renewal ever responds to conduct which occurred before its policy period." Br. of Amicus Curiae United Policyholders at 4. The policies issued by PCIC are nonretroactive claims-made policies.

C. *Public Policy*

1. *Chapter 18.27 RCW Provides a Statutory Basis for Washington Public Policy to Promote Contractors' Financial Responsibility for Bodily Injuries*

Insurance policies are private contracts, and parties are ordinarily free to exercise their freedom of contract to limit the liability covered in the policy. *Mut. of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 210, 643 P.2d 441 (1982), *adhering to*

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

95 Wn.2d 373, 622 P.2d 1234 (1980). However, this court will refuse to enforce an insurance provision if it is contrary to public policy. *Emerson*, 102 Wn.2d at 481. This is a power courts rarely invoke. *Am. Home Assur. Co. v. Cohen*, 124 Wn.2d 865, 873, 881 P.2d 1001 (1994). "Public policy is generally determined by the Legislature and established through statutory provisions. The proper starting place for determining public policy, then, is applicable legislation." *Cary v. Allstate Ins. Co.*, 130 Wn.2d 335, 340, 922 P.2d 1335 (1996) (footnote omitted).

Ms. Cox and Baker rely on chapter 18.27 RCW to establish a public policy of ensuring contractors are financially responsible, primarily through insurance, for losses caused by their negligence. RCW 18.27.050(1) requires contractors to have insurance or financial responsibility to cover $100,000 "for injury or damage including death to any one person" to obtain registration with the state. This chapter also states an explicit purpose: "to afford protection to the public including all persons, firms, and corporations furnishing labor, materials, or equipment to a contractor from unreliable, fraudulent, financially irresponsible, or incompetent contractors." RCW 18.27.140.

To determine if these statutory provisions articulate a public policy to protect the public from the negligence of contractors, it is helpful to look at past cases deciding public policy claims in the insurance context. In *Wiscomb*, this court held the family or household exclusion clause in automobile policies was unenforceable

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

because it violated the public policy articulated in chapter 46.29 RCW, the financial responsibility act (FRA). 97 Wn.2d at 205-06. The FRA required drivers to provide proof that they were able to be financially responsible for losses incurred after a collision by "(1) filing a certificate of insurance; (2) posting a bond; (3) depositing securities in the amount of $60,000; or (4) providing a certificate of self-insurance." *Id*. at 207 (citing RCW 46.29.450). The exclusion at issue in *Wiscomb* excluded coverage for injuries to family or household members of the insured. *Id*. at 205, n.1. We held the FRA "create[d] a strong public policy in favor of assuring monetary protection and compensation to those persons who suffer injuries through the negligent use of public highways by others" while not actually mandating insurance coverage. *Id*. at 206. The court concluded the family or household exclusion violated public policy because it was "directed at a class of innocent victims who have no control over the vehicle's operation and who cannot be said to increase the *nature* of the insurer's risk." *Id*. at 209.

This court has refused to invalidate insurance exclusions on the basis of public policy when there is insufficient statutory foundation. In *Emerson*, the court upheld a family or household member exclusion in a homeowners' insurance policy. 102 Wn.2d at 483. Unlike *Wiscomb*, there was no statute regulating homeownership financial responsibility to dictate a public policy. *Id*. at 481. Although the family or household member exclusion was "harsh and its necessity doubtful," the court refused

*Preferred Contractors Ins. Co. v. Baker & Son Construction, Inc.*
No. 100466-4

to invoke public policy absent a statute or prior court decision. *Id*. at 483. Similarly, the court refused to override a professional liability insurance policy's provision that excluded losses arising from a psychologist's sexual misconduct. *Cohen*, 124 Wn.2d at 871. Because there was no statute that expressly required psychologists to be financially responsible for victims of their sexual misconduct nor even for psychologists to carry malpractice insurance, the court held there was no public policy for the contested exclusion to violate. *Id*. at 875.

The statute insureds rely on for public policy exceptions must also clearly indicate the legislature's intent for private parties to compensate those they injure. In *Cary*, the insurer, relying on an exclusion for acts committed while insane, refused to defend or indemnify its insured after he stabbed a friend to death during a psychotic episode. 130 Wn.2d at 338-39. The victim's wife argued this exclusion violated public policy under the victim's compensation act (VCA), chapter 7.68 RCW, because the VCA represented a concern "that victims of violent crimes receive adequate compensation for their injuries." *Id*. at 341. This court held the VCA did not "represent a public policy against insanity exclusions in homeowners' insurance contracts" because the VCA created a public source of compensation for crime victims and did not compel private insurers to make their private sources of compensation available. *Id*. at 342-43.

*Preferred Contractors Ins. Co. v. Baker & Son Construction, Inc.*
No. 100466-4

In this case, the registration of contractors act clearly states a registered contractor must be financially responsible for at least $100,000 of a person's bodily injury or death. RCW 18.27.050. The legislature explicitly says the purpose of the chapter is to "afford protection to the public" from "unreliable . . . or incompetent contractors." RCW 18.27.140. Although RCW 18.27.050 is not an explicit insurance mandate, we do not require a mandate in order to find a statutory basis for public policy. *See Wiscomb,* 97 Wn.2d at 207 ("[T]o the greatest extent possible without requiring mandatory insurance coverage, the Legislature has demonstrated its intended policy of providing adequate compensation to those injured through the negligent use of this state's highways."). Although the statutory scheme in *Wiscomb* allowed a deposit of $60,000 in order to satisfy the mandate of financial responsibility, we recognized that "[a]s a practical matter, [insurance is] the only way most people can comply" with the statute." *Id*.

Like the statutory scheme in *Wiscomb*, RCW 18.27.050 heavily incentivizes contractors to get insurance rather than creating an assigned account held by the Department of Labor and Industries, the only alternative form of financial responsibility. For example, registered contractors using an assigned account must keep the total amount of money mandated by statute ($100,000) in the account and notify every person they contract with or submit a bid to that they do not have insurance and a claimant must file a lawsuit to reach the assigned account's funds.

12

*Preferred Contractors Ins. Co. v. Baker & Son Construction, Inc.*
No. 100466-4

RCW 18.27.050(3)(a), (c). As we recognized in *Wiscomb*, this means most

contractors will have to secure insurance to comply with the registration requirements.

As a result, these statutes articulate a public policy that contractors must provide

financial compensation, preferably in the form of insurance, to the members of the

public they injure.

PCIC urges us to follow *Harman v. Pierce County Building Department*, 106

Wn.2d 32, 720 P.2d 433 (1986), and decline to find a public policy in favor of

insurance coverage in chapter 18.27 RCW. *Harman* enforced an insurance exclusion

that prevented the contractor's client from collecting damages for the negligent

renovation of a garage. *Id*. at 34. The court held RCW 18.27.050 protected only

"those not in privity with the contractor who might be harmed by his operations." *Id*.

at 37. Because the client was in privity with the contractor to renovate the garage, the

bond requirement of RCW 18.27.040 applied, not RCW 18.27.050's insurance

provision. *Id*. As Mr. Cox was in privity with Baker through the general contractor-

subcontractor relationship, PCIC argues RCW 18.27.050 does not create a public

policy to void any portion of the insurance contract. However, PCIC fails to account

for the whole *Harman* opinion in its analysis. *Harman* also held the bond provision

protected only "(1) labor, (2) breach by a party to a construction contract, (3)

materialmen, (4) taxes, and (5) if entitled, plaintiff's court costs, interest, and fees."

*Id*. at 37-38. Those are breach of contract claims. Here, Ms. Cox is alleging wrongful

13

death, so it is irrelevant that Mr. Cox and Baker were in privity with each other

because the negligence claim is not covered by the bond provision.

RCW 18.27.050 and RCW 18.27.140 articulate the legislature's intent to create

a public policy of ensuring contractors are financially responsible for injuries caused

to members of the public by their negligence. The bond provision relied on in

*Harman* is limited to breach of contract actions. Because chapter 18.27 RCW has

established a public policy holding contractors financially responsible to members of

the public, we must determine if the insurance provisions at issue violates this policy.

2. *Nonretroactive Claims-Made Policies That Provide No Prospective or Retroactive Coverage Violate Public Policy*

Having established that Washington has a public policy requiring contractors to

be financially responsible to members of the public injured by their negligence, we

next turn to the specific insurance provisions at issue in this case. Baker applied for a

claims-made policy. The declarations page of both policies state:

> **<u>CLAIMS MADE AND REPORTED</u>: THIS POLICY
> PROVIDES COVERAGE ONLY FOR CLAIMS
> MADE AGAINST THE MEMBER/INSURED AND
> REPORTED TO PCIC IN WRITING DURING THE
> POLICY PERIOD (See Endorsement Form . . . .)**

Doc. 24, at 41, 104.

The policy specifies it applies only if the "'bodily injury' or 'property damage'

is caused by an 'occurrence' that first takes place or begins during the 'policy

period'." *Id.* at 109. This is language typical of an occurrence policy. Coverage is

*Preferred Contractors Ins. Co. v. Baker & Son Construction, Inc.*
No. 100466-4

further subject to the claims-made and reported limitation endorsement, which states the policy does not provide continuous coverage between renewed policies and additionally applies only to claims first made and reported within the policy period. *Id.* at 149. Read together, these provisions unambiguously state the PCIC policies provide coverage only for losses that occur and are reported to PCIC within the applicable one-year policy period.

Claims-made policies, while fundamentally different from traditional occurrence policies, generally do not violate public policy. *Gannon*, 54 Wn. App. at 340. However, the policies in this case are not pure claims-made policies because they do not provide retroactive coverage, not even for losses that occur during one policy period and are reported during a subsequent policy period. No court in this state has decided the enforceability of nonretroactive claims-made policies, and few other courts across the country have addressed the issue.

One court that has addressed nonretroactive claims-made policies is the New Jersey Supreme Court. In *Sparks v. St. Paul Insurance Co.*, the New Jersey Supreme Court observed that nonretroactive claims-made policies "combine[] the worst features of 'occurrence' and 'claims made' policies and the best of neither" by providing neither retroactive nor prospective coverage found in those policies. 100 N.J. 325, 339, 495 A.2d 406 (1985). At the same time, the court noted the nature of liability reporting is such "that it would be the rare instance in which an error occurred

15

*Preferred Contractors Ins. Co. v. Baker & Son Construction, Inc.*
No. 100466-4

and was discovered with sufficient time to report it to the insurance company, all within a twelve-month period." *Id*. The New Jersey Supreme Court concluded the provisions in the nonretroactive policy limiting recovery to those claims occurring and reported within the policy period to be unenforceable. *Id*. at 341. The court made this decision on a few grounds, including some contract interpretation doctrines Washington does not follow, but also on the basis of public policy. *Id*. at 339.

PCIC argues *Sparks* is an outlier and the majority of states enforce nonretroactive claims-made policies. The cases PCIC rely on are not persuasive. First, PCIC argues Washington courts have enforced insurance policies with retroactive dates limited to the policy's inception date before. *See* Br. of Pl. at 12-13 (citing *MSO Wash., Inc. v. RSUI Grp., Inc.*, No. C12-6090 RJB, 2013 WL 1914482 (W.D. Wash., May 8, 2013) (unpublished)). But the case PCIC cites is distinguishable. Unlike the policies issued by PCIC, the retroactive date of the policies in *MSO* was the inception date of the earliest policy, thereby providing continuous coverage on the policy's renewal and some form of retroactive coverage as to the second policy. *Id*.

Second, PCIC argues we should not follow *Sparks* because it rested part of its analysis on the "reasonable expectations" test for interpreting insurance contracts. PCIC correctly observes that Washington courts do not follow the reasonable expectations test. *See Emerson*, 102 Wn.2d at 485. However, the issue before us is

16

*Preferred Contractors Ins. Co. v. Baker & Son Construction, Inc.*
No. 100466-4

not interpreting an ambiguous insurance provision but determining if an unambiguous provision violates public policy. *Sparks* is helpful in explaining why New Jersey found a similar insurance provision to violate its public policy. But *Sparks* does not inform how we interpret public policy because Washington's public policy analysis is different.

We are mindful that parties to insurance contracts generally should have the freedom to contract. But when the legislature orders contractors to bear financial responsibility for the injuries their negligence may cause and dictates insurance is the preferable method to comply with this mandate, we cannot enforce insurance provisions that render coverage so narrow it is illusory. While RCW 18.27.050 does not require insurers to issue occurrence policies or provide retroactive coverage to contractors switching from an occurrence to a claims-made policy, *see HB Dev., LLC v. W. Pac. Mut. Ins.*, 86 F. Supp. 3d 1164, 1181-82 (E.D. Wash. 2015), insurers should not issue policies that essentially cause contractors to default on their statutorily mandated financial responsibility. The insurance policies PCIC issued to Baker fail to provide prospective or retroactive coverage and create limited one-year windows for claims to occur and be reported to qualify for coverage. Such restrictive coverage violates Washington's public policy. Therefore, we answer the certified question in the affirmative.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

CONCLUSION

Through RCW 18.27.050 and RCW 18.27.140, the legislature has created a public policy wherein contractors must be financially responsible for the injuries they negligently inflict on the public. With such a public policy established, a contractor's CGL policy that requires the loss to occur and be reported to the insurer in the same policy year and fails to provide prospective or retroactive coverage is unenforceable. We answer the certified question in the affirmative.

_____
Owens, J.

WE CONCUR:

_____
González, C.J.

_____
Gordon McCloud, J.

_____
Johnson, J.

_____
Yu, J.

_____
Madsen, J.

_____
Whitener, J.

_____
Stephens, J.

_____
Siddoway, J.P.T.

18